## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COLE RAYWID & BRAVERMAN, LLP <br> 1919 Pennsylvania Avenue, N.W., Suite 200 <br> Washington, D.C. 20006 <br><br>     Plaintiffs, <br><br>     v. <br><br> ROBERT J. GEORGE; <br> CUSTOM COMMUNICATIONS <br> INTERNATIONAL, INC.; <br> BOSTON PUBLISHING COMPANY, INC. <br> STRATCOMM, INC.; <br> STRATEGIC COMMUNICATIONS, INC.; <br> CUSTOM COMMUNICATIONS, LLC; <br> One Gateway Center, Suite 651 <br> Newton, MA 02458 <br><br>     Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. 07-CV-2242-JR <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## AMENDED COMPLAINT

Plaintiff Cole Raywid & Braverman, LLP ("CRB"), in complaint against Defendants Custom Communications International, Inc. ("CCI"); Boston Publishing Company, Inc. ("Boston Publishing"); Custom Communications, LLC ("CCI LLC"); StratComm, Inc. ("StratComm"); and Strategic Communications, Inc. ("Strategic Communications"); and Robert J. George ("George") individually, and as President & Chief Operating Officer ("CEO") and alter ego of each of the above-named Defendants, state as follows:

1.    This is an action to recover attorney's fees and costs for legal services performed, billed, and unpaid, in which CRB seeks monetary relief in the form of payment of attorneys' fees and costs incurred for legal services rendered pursuant to the validly executed Fee Agreement

dated July 22, 2002, between CRB and CCI (attached as Exhibit A hereto). In addition, CRB seeks enforcement of the Promissory Note entered by CCI and George as President and CEO of CCI, and in his individual capacity as well, to personally guarantee the indebtedness of CCI to CRB, signed and dated January 2, 2003 (attached as Exhibit B hereto).

## PARTIES

2.    Plaintiff CRB is a limited liability partnership duly organized and existing under the laws of the District of Columbia, with a principal place of business in Washington, D.C. Plaintiff CRB at all times provided legal services to CCI by, or under the direct supervision of, attorneys licensed to practice in the District of Columbia.

3.    Defendant CCI is a privately held corporation organized and incorporated in the Commonwealth of Massachusetts with its principal place of business in Newton, Middlesex County, Massachusetts, and is controlled by its President & CEO George.

4.    Defendant George, a resident of the Commonwealth of Massachusetts, is the sole personal guarantor pursuant to the Promissory Note entered into by and between Plaintiff CRB and Defendant George.

5.    Defendant Boston Publishing is a privately held corporation organized and incorporated in the Commonwealth of Massachusetts with its principal place of business in Newton, Middlesex County, Massachusetts, and is controlled by its President George, and on information and belief, is successor-in-interest to and alter ego of CCI and alter ego of George.

6.    Defendant StratComm is a privately held corporation organized and incorporated in the Commonwealth of Massachusetts with its principal place of business in Newton, Middlesex County, Massachusetts, and is controlled by its President George, and on information and belief, is successor-in-interest to and alter ego of CCI and alter ego of George.

AMENDED COMPLAINT                    - 2 -

7.      Defendant Strategic Communications is a privately held corporation organized and incorporated in the Commonwealth of Massachusetts with its principal place of business in Newton, Middlesex County, Massachusetts, and is controlled by its President George, and on information and belief, is successor-in-interest to and alter ego of CCI and alter ego of George.

8.      Defendant CCI LLC is a privately held limited liability corporation organized and incorporated in the Commonwealth of Massachusetts with its principal place of business in Newton, Middlesex County, Massachusetts, and is controlled by its Manager George, and on information and belief, is successor-in-interest to and alter ego of CCI and alter ego of George.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1), in that CRB is a limited liability partnership organized and existing in the District of Columbia, *See* Fed. R. Civ. P. 17(b); D.C. Code § 33-103.07, while CCI, CCI LLC, StratComm, Strategic Communications, and Boston Publishing are Massachusetts corporations, and George is a resident and citizen of the Commonwealth of Massachusetts, such that this suit is between citizens of different States, and the amount in controversy under the Fee Agreement and Promissory Note exceeds $75,000 exclusive of interests and costs.

10.      Venue is proper under 28 U.S.C. § 1391(a)(2), because a substantial part of the events and omissions giving rise to the claim occurred in the District of Columbia, specifically, CRB's provision of legal services to CCI, and because the Fee Agreement and Promissory Note state that the parties agree that enforcement suits may be brought in this District.

11.      Jurisdiction and venue are proper regarding Defendants CCI LLC, StratComm, and Strategic Communications, Inc. because these entities are successors-in-interest to CCI and

on information and belief are alter ego entities of George and CCI such that the liabilities of CCI and George to CRB may be imputed to them for purposes of jurisdiction.

## FACTS

12.    Defendant CCI, under the direction of Defendant George, designs, produces, and publishes, *inter alia*, magazines and newsletters for businesses, organizations, and other parties in need of CCI's services.

13.    Defendant Boston Publishing, under the direction of Defendant George, designs, produces, and publishes, *inter alia*, magazines and newsletters for businesses, organizations, and other parties in need of Boston Publishing's services.

14.    Defendant StratComm, under the direction of Defendant George, designs, produces, and publishes, *inter alia*, magazines and newsletters for businesses, organizations, and other parties in need of StratComm's services.

15.    Defendant Strategic Communications, under the direction of Defendant George, designs, produces, and publishes, *inter alia*, magazines and newsletters for businesses, organizations, and other parties in need of Strategic Communications' services.

16.    In 2001, CCI entered a contract with The National Society of the Daughters of the American Revolution ("NSDAR") under which CCI was responsible for, *inter alia*, the layout, design, artwork, graphics, writing, editing, printing, quality control and production of a NSDAR magazine and newsletter, which ultimately was published as *American Spirit* magazine.

17.    In early July 2002, after publication of six bimonthly issues of *American Spirit*, NSDAR filed a complaint against CCI in the United States District Court for the District of Columbia relating to NSDAR's termination of the parties' publishing contract.

AMENDED COMPLAINT                - 4 -

18.     CCI retained CRB to represent it in the lawsuit and on July 22, 2002, executed a Fee Agreement memorializing the attorney-client relationship and formalizing the parties' business relationship. Exh. A.

19.     Under the Fee Agreement, CCI "employ[ed CRB] as its attorneys at law to represent it in connection with its defense of the [NSDAR suit], any counterclaims that may be asserted therein, and any matters ancillary to that representation." Exh. A ¶ I.

20.     CCI agreed in the Fee Agreement, "[i]n consideration of the legal services provided by CRB," to "pay CRB on an hourly basis, at its then prevailing standard hourly rates, for all services rendered" on CCI's behalf, and CCI paid "as a retainer, the sum of $5,000, which [] shall be held by CRB during the course of its work . . . and applied to payment of [the] final bill" therefor. Exh. A ¶¶ II, VI.

21.     CCI further agreed to "be liable for all expenses reasonably incurred by CRB in representing" CCI, including "some or all of the following:  filing fees, copying charges, telephone charges, postage and delivery charges, local counsel fees, travel charges, secretarial overtime, computerized legal research, messenger fees, and other incidental fees." Exh. A ¶ III.

22.     The Fee Agreement also provided that payment of bills rendered by CRB on a monthly basis for the fees and expenses CCI incurred "shall be due within thirty (30) days of receipt," and that "a service charge of 1 percent per month may be added to all balances outstanding for more than 45 days from the date of billing." Exh. A ¶ IV.

23.     CCI agreed that if it did "not promptly pay any amounts due under [the Fee] Agreement, and should it become necessary for CRB to . . . commence an action in court to collect such sums, . . . such suit may be brought in any of the courts of the District of Columbia,"

and CCI would "pay all costs and attorneys fees incurred incident to such collection efforts." Exh. A ¶ V.

24.    CRB performed legal services for CCI, including but not limited to defending the NSDAR suit, bringing a counterclaim in that action, and otherwise litigating and, ultimately, helping CCI settle the dispute with NSDAR.

25.    By year-end 2002, CCI had incurred indebtedness to CRB under the Fee Agreement in the amount of nearly $193,000, of which CCI paid $127,000 out of the proceeds of the settlement with NSDAR, while for the remaining approximately $66,000, George executed a Promissory Note both on behalf of CCI as its President and CEO, and in his personal capacity as guarantor on the Promissory Note. Exh. B at 1.

26.    Under the Promissory Note, CCI "promise[d] to pay CRB the balance of all billed and unbilled legal fees and expenses owing to CRB by CCI (approximately $66,000) in two equal payments, the first of which shall be made within thirty (30) days from the date of th[e] Promissory Note, and the second of which (which shall also include any trailing out-of-pocket expenses and additional legal fees incurred in connection with the completion of settlement and dismissal of the [NSDAR] case) within sixty (60) days of th[e] Promissory Note." Exh. B ¶ 3.

27.    The Promissory Note also recited that "Robert George, individually, personally guarantees the full performance of CCI in each of the respects" specified in the Promissory Note, and, further, that "CCI and Mr. George agree that in the event either of them should fail to perform the obligations" of the Promissory Note, "they waive any requirement of presentment and notice, agree to a confession of judgment in the amount of any unpaid legal fees and expenses then owing to CRB together with interest on such amounts" and that CRB may bring suit in the District of Columbia . . . to enforce th[e] Promissory Notice," in which case "CCI and

Mr. George, jointly and severally, shall reimburse CRB for any legal fees and expenses incurred in collecting." Exh. B ¶¶ 4–5.

28.    Shortly after execution of the Promissory Note and in reliance thereon, and in expectation of payment of all outstanding sums thereunder, CRB agreed to continue representing CCI in defending claims by NSDAR that CCI breached its settlement agreement with NSDAR, and did in fact render services to CCI in that regard, resulting in the accrual of further fees and expenses that CCI owed CRB, in the amount of $26,293.81.

29.    Notwithstanding execution of the Promissory Note and the additional legal services rendered to CCI thereafter, neither CCI nor George made either of the payments called for by the Promissory Note or paid for the additional services rendered.

30.    Between the unpaid balance outstanding at the time of the Promissory Note, and the fees and expenses for services rendered by CRB thereafter, by early 2003 CCI and George owed CRB $75,282.70 exclusive of interest, and with the interest accrued thereon in accordance with the Fee Agreement and Promissory Note, currently are indebted to CRB in an amount of nearly $87,400.

31.    Since 2003, CCI and George have failed to satisfy their outstanding debt to the firm despite CRB's efforts to collect.

32.    CRB has demanded payment repeatedly from CCI and George, and while George has made assurances that the outstanding balance would be paid, CRB's efforts to collect have been fruitless.

33.    George has claimed that CCI has been dissolved but has concealed from CRB the fact that he has continued and transferred CCI's businesses under the guises of newly-formed alter ego corporations.

AMENDED COMPLAINT                           - 7 -

34.    Meanwhile, the design, production, and publication of, *inter alia*, magazines and newsletters for businesses, organizations, and other parties, such as that CCI has provided has continued through Boston Publishing, StratComm, and Strategic Communications, all companies George controls.

35.    One of the pages at Boston Publishing's website (copy attached as Exhibit C hereto) claims that "over the years Boston Publishing Company has offered a range of publications and services to both the general consumer and to business markets," even though data available online through the Massachusetts Secretary of the Commonwealth, Corporations Division (copy attached as Exhibit D hereto) states that Boston Publishing Company's date of organization was April 10, 2007.

36.    The same page claims that the company published a book series entitled *The Vietnam Experience* in collaboration with Time-Life Books.  These books, which are listed on Amazon.com, were published during the 1980s.  Exh. C.

37.    Elsewhere on Boston Publishing's website, at its "home" page (copy attached as Exhibit E hereto) the company invites visitors to "visit other CCI websites" in addition to the Boston Publishing site, including the home page for Defendant's StratComm and Strategic Communications.

38.    On information and belief, Boston Publishing has absorbed, carried on the activities of, and/or is the successor-in-interest to CCI, such that Boston Publishing is liable for the obligations of CCI by way of a *de facto* merger; on the basis that Boston Publishing is a mere continuation of the CCI business; and/or on the basis that Boston Publishing was formed in an effort to avoid the liabilities of CCI, its predecessor.

AMENDED COMPLAINT                    - 8 -

39.     Strategic Communications and StratComm, interrelated entities which operate out of the same address in Newton, Massachusetts as the other Defendants, likewise provide publication services, including newsletters, customer magazines, and other publications to corporate clients.

40.     One of the pages at StratComm's/Strategic Communications' website (copy attached as Exhibit F hereto) claims that "[w]e have been creating content for major corporations and associations for more than 30 years" and identifies both companies interchangeably as a single entity.  The Defendants make this claim of experience despite the fact that data available online through the Massachusetts Secretary of the Commonwealth, Corporations Division (copy attached as Exhibits G and H hereto) state that StratComm was incorporated July 15, 2005, and Strategic Communications was incorporated on April 10, 2007 — the same day George incorporated Boston Publishing.

41.     Another page at StratComm's/Strategic Communications' website (copy attached as Exhibit I hereto) claims that these companies — rather than Boston Publishing — published the 1980s-era *Vietnam Experience* book series, stating that the series  was "created and written entirely by Strategic Communications."

42.     Boston Publishing's website identifies StratComm as a "custom publishing division" of Boston Publishing.  Exh. E.

43.     On information and belief, StratComm and Strategic Communications have absorbed, carried on the activities of, and/or are successors-in-interest to CCI, such that they are liable for the obligations of CCI by way of a *de facto* merger; on the basis that they jointly are a mere continuation of the CCI business; and/or on the basis that they were formed in an effort to avoid the liabilities of CCI, their predecessor.

AMENDED COMPLAINT                          - 9 -

44.     On information and belief, CCI LLC is a limited liability company controlled by Defendant George and engaged in businesses and/or holdings associated with publishing and/or strategic communications and is related in operations and interest to CCI.  On information and belief, CCI LLC has absorbed, carried on the activities of, and/or is the successor-in-interest to CCI, such that CCI LLC is liable for the obligations of CCI by way of a *de facto* merger, and/or on the basis that CCI LLC is a mere continuation of the CCI business.

45.     During CRB's long efforts to collect the debt, Defendant George made numerous statements that he and CCI could not pay these debts due to his/CCI's financial condition. George willfully concealed from CRB, in an attempt to hinder and obstruct its ability to collect, the fact that he had formed additional companies through which he was conducting the same business and receiving revenues.

46.     Through a series of entity-incorporations and transactions, Defendant George transferred the assets, goodwill, operations, and customers of the CCI business to Defendants StratComm, Strategic Communications, and Boston Publishing in exchange, on information and belief, for stock in the newly formed corporations.  This stock was not transferred to CCI but to George himself.  In the alternative, CRB alleges, on information and belief, that these transfers were made without the exchange of bargained-for consideration.

47.     George engaged in and concealed the nature of these transactions, as well as concealing the existence of both his creation of and ownership interest in the new entities from CRB, with the intent to hinder, delay and obstruct CRB in the collection of his/CCI's debts.

48.     As a result of CCI's and George's continued failure to make good on the promises to pay and because the amount outstanding is excessive and has been outstanding for so long, after attempting for nearly four years to work out payment options and accommodations with

AMENDED COMPLAINT                  - 10 -

CCI and George, CRB has finally been forced to file this suit to recover legal fees and costs owed.

## Count I

### (Contract – Fee Agreement)

49.    Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 48, inclusive, as though fully set forth herein.

50.    Plaintiff was engaged by Defendants CCI and George under contract, specifically, the Fee Agreement, whereby Plaintiff provided legal services and representation in CCI's suit with NSDAR.

51.    The terms of that Fee Agreement provide for Plaintiff to be paid at its prevailing hourly rates for all services rendered.

52.    The Fee Agreement further provides that upon Plaintiff's institution of collection processes for non-payment of fees billed, Defendant CCI agrees to pay all costs and attorney's fees incurred incident to such collection process.

53.    Plaintiff rendered valuable legal services under the terms of the Fee Agreement from 2002 through 2003.

54.    Plaintiff has incurred costs during its representation of Defendants under the terms of the Fee Agreement from 2002 through 2003.

55.    At all times Plaintiff provided Defendants with timely billing invoices.

56.    Before instituting this proceeding, Plaintiff made numerous demands on Defendant to pay outstanding bills for fees earned and costs incurred, and Plaintiff was given numerous assurances that payment would be made.

AMENDED COMPLAINT                - 11 -

57.    Nonetheless, no payment has been forthcoming, and Defendants CCI and George thus have breached the terms of the Fee Agreement by failing to pay outstanding bills for fees earned and costs incurred.

58.    Defendants CCI and George have outstanding bills and invoices in the amount of $87,381.27, exclusive of the costs of this action, for which they are liable to CRB.

## Count II

### (Contract – Guaranty)

59.    Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 58, inclusive, as though fully set forth herein.

60.    Defendants executed a Promissory Note providing the promise to pay all outstanding fees and expenses due CRB, and containing George's promise to be personally responsible and liable for the full performance of CCI and in favor of Plaintiff CRB.

61.    The Promissory Note provides specifically for George's guarantee of all payments due to CRB from CCI pursuant to the Fee Agreement, and any additional legal fees incurred in connection with the representation that as of the date of the Promissory Note had yet to accrue or be incurred.

62.    In reliance on the Promissory Note CRB forestalled collection on the amounts due it from CCI under the Fee Agreement and rendered additional services to CCI, for which further fees and expenses were incurred and have not been paid.

63.    The Promissory Note is a bargained for, validly executed, enforceable contract to be governed by the laws of the District of Columbia.

64.    Defendant George, under the Promissory Note, is now personally liable and responsible for payment of bills pursuant to the Fee Agreement that remain unpaid by CCI.

AMENDED COMPLAINT                - 12 -

65.     Plaintiff CRB has made demand for payment on Defendants, and in particular on Defendant George, to pay CCI's outstanding bills due and owing to CRB.

66.     Despite assurances that payment would be forthcoming, Defendants have not paid outstanding bills due by CCI and have thus breached the Promissory Note.

67.     Plaintiff CRB is entitled to a judgment to collect from George on CCI's bills outstanding in the amount of $87,381.27, representing fees earned and costs incurred by Plaintiff CRB in its representation of CCI, exclusive of costs of this action.

### Count III

### (Unjust Enrichment)

68.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 67, inclusive, as though fully set forth herein.

69.     From July 2002 through April 2003, CRB provided legal services to CCI under the Fee Agreement and, later, the Promissory Note.

70.     Defendants knowingly accepted such services and enjoyed the benefit from them.

71.     The legal services rendered, including the fees for labor and the charges CRB expended, minus amounts previously paid by CCI, are reasonably worth the sum of $75,282.70.

72.     Defendants have not paid any of the amounts due to CRB.

73.     It would unjustly enrich CCI and/or George and/or the other Defendants (as CCI's successors in interest) to allow them to retain the benefits of the services provided by CRB without compensation.

AMENDED COMPLAINT                - 13 -

## Count IV

### (Money Due on Account)

74.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 73, inclusive, as though fully set forth herein.

75.     Defendants CCI and George are liable to Plaintiff CRB on a running account in the amount of $87,381.27, exclusive of the costs of this action.

## Count V

### (Fraudulent Transfer)

76.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 75, inclusive, as though fully set forth herein.

77.     George's and CCI's actions in transferring the assets, operations, goodwill, and customers of CCI to Defendants CCI LLC, Boston Publishing, StratComm, and/or Strategic Communications, were taken in violation of the Uniform Fraudulent Transfer Act (*see* D.C. Code § 28-3101 *et seq.*; *see also* Mass. Gen. Laws. ch. 109A, § 1 *et seq.*) and Plaintiffs are entitled to the amount of $87,381.27, representing fees earned and costs incurred by Plaintiff CRB in its representation of CCI, exclusive of costs of this action, to be collected from Defendants Boston Publishing, StratComm, and/or Strategic Communications, in addition to such other relief as the Court deems proper.

AMENDED COMPLAINT                    - 14 -

## Count VI

### (Contract – Fee Agreement; Contract – Guarantee;
### Unjust Enrichment; Money Due on Account)

### (Successors in Interest)

78.    Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 77, inclusive, as though fully set forth herein.

79.    Defendants CCI LLC; Boston Publishing; StratComm; and Strategic Communications are jointly, severally, or jointly and severally liable as successors-in-interest to all the liabilities of defendant CCI set forth herein.

## Count VII

### (Contract – Fee Agreement; Contract – Guarantee;
### Unjust Enrichment; Money Due on Account)

### (Alter Ego)

80.    Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 79, inclusive, as though fully set forth herein.

81.    Defendant George operates the corporate defendants, which, on information and belief, he individually owns and pervasively controls without regard for corporate formalities. He intermingles their business affairs and holds them forth as interchangeable and related entities performing substantially identical business functions and causing some of these companies to claim credit for activities actually performed by a now-defunct publishing company he previously controlled.

82.    On information and belief, Defendant George created StratComm, Boston Publishing, and Strategic Communications in part to avoid the liabilities previously incurred by CCI, including the liabilities at issue in this suit.

AMENDED COMPLAINT                      - 15 -

83.    Defendants CCI LLC; Boston Publishing; StratComm; and Strategic Communications are alter egos of each other and of Defendants George and CCI and are therefore liable for the debts George and CCI incurred to CRB.

**RELIEF**

WHEREFORE, for the reasons stated above, Plaintiff, Cole Raywid & Braverman, LLP, respectfully requests that the Court enter judgment in its favor and against Defendants Robert J. George individually, and Custom Communications International, Inc.; Custom Communications, LLC; StratComm, Inc.; Strategic Communications, Inc.; and/or Boston Publishing Company, Inc.; and grant CRB monetary relief of $87,381.27 for amounts due outstanding, together with reasonable attorneys' fees and costs incurred in bringing this action, and post-judgment interest and for whatever other relief this Court deems just and proper.

Dated this 11th day of January, 2008.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

Ronald G. London – Bar No. 456284
Brigham J. Bowen – D.D.C. Bar No. D00301
Davis Wright Tremaine LLP
1919 Pennsylvania Ave., N.W. Suite 200
Washington, D.C.  20006
(202) 973-4200

ATTORNEYS FOR PLAINTIFF

Address of Plaintiff:

Cole Raywid & Braverman, LLP
1919 Pennsylvania Ave., N.W. Suite 200
Washington, D.C.  20006

AMENDED COMPLAINT                    - 16 -

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Amended Complaint was

served by first-class mail, postage prepaid, this 11th day of January, 2008, upon the following:

Robert J. George
One Gateway Center, Suite 651
Newton, MA 02458

Custom Communications International, Inc.
One Gateway Center, Suite 651
Newton, MA 02458

Boston Publishing Company, Inc.
One Gateway Center, Suite 651
Newton, MA 02458

Custom Communications, LLC
One Gateway Center, Suite 651
Newton, MA 02458

StratComm, Inc.
One Gateway Center, Suite 651
Newton, MA 02458

Strategic Communications, Inc.
One Gateway Center, Suite 651
Newton, MA 02458

_____
Brigham J. Bowen

# EXHIBIT A

## COLE, RAYWID & BRAVERMAN, L.L.P.
## FEE AGREEMENT

**I.    AGREEMENT TO RETAIN CRB**: Custom Communications International, Inc. hereby employs the law firm of COLE, RAYWID & BRAVERMAN, L.L.P. ("CRB") as its attorneys at law, to represent it in connection with its defense of *The National Society of the Daughters of the American Revolution v. Custom Communications International, Ind.*, No. 02 1341 (TPJ) (D.D.C.), any counterclaims that may be asserted therein, and any matters ancillary to that representation.

**II.    FEES**: In consideration of the legal services provided by CRB, we agree to pay CRB on an hourly basis, at its then prevailing standard hourly rates, for all services rendered on our behalf.

**III.    EXPENSES**: We will be liable for all expenses reasonably incurred by CRB in representing us. These expenses may include some or all of the following: filing fees, copying charges, telephone charges, postage and delivery charges, local counsel fees, travel charges, secretarial overtime, computerized legal research, messenger fees, and other incidental expenses.

**IV.    BILLING AND PAYMENT; SERVICE CHARGE**: We understand that invoices for legal services and expenses will be rendered by CRB monthly, and that payment of such bills shall be due within thirty (30) days of receipt. We agree that a service charge of 1 percent per month may be added to all balances outstanding for more than 45 days from the date of billing. We agree that CRB may cease to perform work for us under this Agreement should our account become delinquent.

**V.    COLLECTION; ATTORNEY FEES**: Should we not promptly pay any amounts due under this Agreement, and should it become necessary for CRB to retain attorneys and/or commence an action in court to collect such sums, we agree that such suit may be brought in any of the courts in the District of Columbia, and we agree to pay all costs and attorneys fees incurred incident to such collection efforts.

**VI.    RETAINER**: We agree to pay to CRB, as a retainer, the sum of $5,000.00, which sum shall be held by CRB during the course of its work for us, and applied to payment of our final bill.

*CUSTOM COMMUNICATIONS*
*INTERNATIONAL, INC.*

By: _Robert G George_
Name: _ROBERT GEORGE_
Title: _Pres & CEO_
Dated: _7-22-02_

_Retainer check en route along with magazines_

# EXHIBIT B

# PROMISSORY NOTE

WHEREAS, Cole, Raywid & Braverman, LLP. ("CRB") has provided legal services to, and incurred expenses on behalf of, Custom Communications International, Inc. ("CCI") in connection with litigation in the District of Columbia,

WHEREAS, the bills previously rendered by CRB to CCI have amounted to approximately $107,957.97, and the services provided in October, November and December 2002 have amounted to approximately $85,000.00, the latter amount of which has not yet been billed by CRB to CCI,

WHEREAS, settlement funds previously deposited in a CRB escrow account may now be disbursed by CRB due to the settlement of the CCI litigation,

NOW, THEREFORE,

1.    CCI authorizes CRB to transfer $127,000.00 from its Escrow Account to its General Account in payment of that amount of billed and unbilled legal fees and expenses.

2.    CCI directs CRB to wire the remaining $48,000.00 from its Escrow Account to the CCI bank account.

3.    CCI promises to pay CRB the balance of all billed and unbilled legal fees and expenses owing to CRB by CCI (approximately $66,000.00) in two equal payments, the first of which shall be made within thirty (30) days from the date of this Promissory Note, and the second of which (which shall also include any trailing out-of-pocket expenses and additional legal fees incurred in connection with the completion of settlement and dismissal of the case) within sixty (60) days of the date of this Promissory Note.

4.    Robert George, individually, personally guarantees the full performance of CCI in each of the respects described above.

159539_1.DOC

5.    CCI and Mr. George agree that in the event that either of them should fail to perform the obligations described above, they waive any requirement of presentment and notice, agree to a confession of judgment in the amount of any unpaid legal fees and expenses then owing to CRB together with interest on such amounts from the date of this Promissory Note, agree that CRB may bring suit in the District of Columbia (under D.C. law, but not applying any state's choice of law provisions) to enforce this Promissory Note, and agree that CCI and Mr. George, jointly and severally, shall reimburse CRB for any legal fees and expenses incurred in collecting upon this Note.

**CUSTOM COMMUNICATIONS**
**INTERNATIONAL, INC.**

By: _____
Robert George

Date: _____

**ROBERT GEORGE**

_____
Robert George

Date: _____

**NOTARY:**

Sworn to me and subscribed this 2 day of ___January___, 2003.

_____
Notary Public

My Commission Expires:
9/1/2006

159539_1.DOC

# EXHIBIT C



A respected New England firm for many decades, Boston Publishing Company, Inc. is primarily known for its distinctive books and periodicals. The company is a leader in direct marketing, which has been its primary means of distribution for more than twenty-five years.

Boston Publishing Company engages in the publication of single-volume history books, multi-volume book series, professional and consumer newsletters, medical and business handbooks, directories, maps, aeronautical charts, and Web content; all are benchmarks in their respective markets.

Boston Publishing is best known for the landmark book series titled The Vietnam Experience. This widely acclaimed twenty-five volume set of books retains its place as a cornerstone of the growing literature of that momentous period. Boston Publishing is especially proud of the ground breaking research, meticulous scholarship, and painstaking editorial craftmanship behind this landmark series. The New York Times called this work "the source on Vietnam", and John Kenneth Galbraith nominated the series twice for a Pulitzer Prize. In all, Boston Publishing has probably compiled and published more authoritative material on this subject than any other single publisher.

Over the years Boston Publishing Company has offered a range of publications and services to both the general consumer and to business markets. Books, newsletters, handbooks, directories, manuals, maps, charts, catalogs, and Web content have addressed topics varying in scope from business management and real estate to aviation safety, medicine, history, architecture, and the decorative arts. Boston Publishing Company continues to build on this strong base to refine its current products and welcome new challenges.

Newsletters | Magazines | Books | Web Content | Direct Mail
About BPC | Credentials | Contact Us

**BOSTON PUBLISHING COMPANY, INC.**
One Gateway Center, Suite 651
Newton, MA 02458
Phone: (617) 969-0700
TollFree: (800) 872-8122
Fax: (617) 969-0740
Email: www@bostonpublishing.com

12/4/2007 2:04 PM

# EXHIBIT D



# The Commonwealth of Massachusetts
# William Francis Galvin

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

**BOSTON PUBLISHING COMPANY, INC.** Summary Screen

Help with this form

| Request a Certificate |
| --- |

**The exact name of the Domestic Profit Corporation:** <u>BOSTON PUBLISHING COMPANY, INC.</u>

**Entity Type:** <u>Domestic Profit Corporation</u>

**Identification Number:** <u>000948995</u>

**Date of Organization in Massachusetts:** <u>04/10/2007</u>

**Current Fiscal Month / Day:** <u>12 / 31</u>

**The location of its principal office in Massachusetts:**
No. and Street: <u>ONE GATEWAY CENTER, UISTE 651</u>
City or Town: <u>NEWTON</u>          State: <u>MA</u>   Zip: <u>02458</u>   Country: <u>USA</u>

**If the business entity is organized wholly to do business outside Massachusetts, the location of that office:**
No. and Street:
City or Town:          State:          Zip:          Country:

**Name and address of the Registered Agent:**
Name: <u>ROBERT J. GEORGE</u>
No. and Street: <u>ONE GATEWAY CENTER, SUITE 651</u>
City or Town: <u>NEWTON</u>          State: <u>MA</u>   Zip: <u>02458</u>   Country: <u>USA</u>

**The officers and all of the directors of the corporation:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code | Expiration<br>of Term |
| --- | --- | --- | --- |
| PRESIDENT | ROBERT J. GEORGE | ONE GATEWAY, SUITE 651<br>NEWTON, MA 02458 USA | |
| TREASURER | ROBERT J. GEORGE | ONE GATEWAY, SUITE 651<br>NEWTON, MA 02458 USA | |
| SECRETARY | ROBERT J. GEORGE | ONE GATEWAY, SUITE 651<br>NEWTON, MA 02458 USA | |
| DIRECTOR | ROBERT J. GEORGE | ONE GATEWAY, SUITE 651<br>NEWTON, MA 02458 USA | |

business entity stock is publicly traded:  __

**The total number of shares and par value, if any, of each class of stock which the business entity is authorized to issue:**

| Class of Stock | Par Value Per Share Enter 0 if no Par | Total Authorized by Articles of Organization or Amendments | | Total Issued and Outstanding |
|---|---|---|---|---|
| | | *Num of Shares* | *Total Par Value* | *Num of Shares* |
| CNP | $0.00000 | 275,000 | $0.00 | 0 |

__ Consent        __ Manufacturer        __ Confidential Data        __ Does Not Require Annual Report

__ Partnership    **X** Resident Agent    __ For Profit              __ Merger Allowed

**Select a type of filing from below to view this business entity filings:**

ALL FILINGS
Administrative Dissolution
Annual Report
Application For Revival
Articles of Amendment

[ View Filings ]    [ New Search ]

| Comments |
|---|
| |

© 2001 - 2007 Commonwealth of Massachusetts
All Rights Reserved

[?]
Help

# EXHIBIT E

# Boston Publishing Company, Inc.

- Books
- Newsletters
- Magazines
- Web Content
- Direct Mail
- About BPC
- Credentials
- Contact Us

**Back to Home**



Welcome to Boston Publishing Company (BPC). At this site you will find information about our company and the publishing and other communication services we provide to our clients.

Boston Publishing is a full service publisher. We create newsletters, magazines, books, direct mail and Web site content for our clients. Our staff manages everything from edit, art and design through print, circulation, distribution and database management. We produce content for both print and electronic publications.

Because publishing is our only business we can produce higher quality publications for a lower cost than companies or associations are able to do in-house. With BPC you can outsource your communications to a company that knows publishing and direct marketing and can execute programs based on your objectives.

We work for major corporations around the world. Our staff knows how to harness and enhance the power of your data base. Target marketing and communications is our business.

Keep exploring this site and you will find that BPC has all the tools to develop a program that fits your company's needs. Please call us at: 617-969-0700 for more information. Thank you.

Or, e-mail us at: www@bostonpublishing.com

Thank you for visiting us at Boston Publishing Company.

Newsletters | Magazines | Books | Web Content | Direct Mail

About BPC | Credentials | Contact Us

**BOSTON PUBLISHING COMPANY, INC.**
One Gateway Center, Suite 651
Newton, MA 02458
Phone: (617) 969-0700
TollFree: (800) 872-8122
° Fax: (617) 969-0740
Email: www@bostonpublishing.com



Please visit our custom
publishing division at
http://www.stratcomminc.com%20target=/

**Please visit other CCI websites at:**
OpenMagazine.net | StratComm.info| VietnamExperience.com

# EXHIBIT F

[We provide measurable results.]

 stratcomm

WHAT WE DO | HOW WE DO IT | WHAT SETS US APART | CASE STUDIES | CLIENTS | CONTACT US

Overview | FAQs

**A CLOSER LOOK**

Click below to take a closer look at the integrated program designed for Prudential Financial. This online program reflects our depth and experience.

SPONSOR SPOTLIGHT

MORE

**Q: What kinds of services does your firm provide?**
**A:** Strategic Communications, Inc. helps companies to communicate more effectively with their customers, prospects, employees and shareholders. We do this by creating their corporate print and electronic publications. We also write and publish their white papers, website content and their marketing materials. High profile companies trust our experience and good judgment. We have hundreds of experienced writers under contract; we're able to produce high-quality content on virtually any subject, in any language and deliver it using any medium. We enable our clients to control their message and speak with one voice. In addition to producing our client's periodicals, we maintain their websites and manage their databases.

**Q: How much does a communications program cost?**
**A:** That depends on what your communications needs are. Before providing you with pricing, we'll want to schedule a conference call or in-person meeting to determine what your communications challenges and goals are, who your target audience is, what you are trying to accomplish and what medium you would like to use. We then assess your pain points and present you with a proposal outlining our recommendations and pricing for a communications program.

**Q: Who are your clients?**
**A:** We work primarily with financial services companies, technology companies and associations, although we have frequently worked with clients in other industries who have a large database and a pressing need to communicate. We'd like to bring you the same expertise we've brought to American Express, IBM, Deloitte & Touche, Fidelity Investments, Goldman Sachs, Prudential Financial, Sheraton Corporation, Ciga Hotels (Europe), General Motors, PEAK Technologies, Computer Associates, Citibank, the U.S. Olympic Committee, AFL/CIO, Western Union, Scholastic Inc., MGM Grand, Time-Life Books, Blue Cross/Blue Shield, Mellon Bank, the Congressional Medal of Honor Society, the Massachusetts Association of REALTORS®, the Real Estate CyberSpace Society, Aircraft Owners and Pilots Association, the U.S. Attorney General's Office, Hewlett Packard and many others.

**Q: How do you work with your clients?**
**A:** Strategic Communications offers a "turnkey" solution, including the creation of content, design, production, printing and distribution, as well as web hosting, transmission of electronic publications and database management. It's a collaborative process; we work closely with our clients to develop integrated communications programs that allow them to control their message and deliver it efficiently to a targeted audience. As your communications partner, we manage the entire program from concept through delivery, while getting your approval every step of the way.

**Q: What do you publish?**
**A:** We specialize in producing print and electronic publications, including newsletters, magazines, white papers, online publications of all types, web pages and other targeted communications for clients.

**Q: Can you explain the process?**
**A:** Once our proposal has been reviewed and approved by you, we initiate a kick-off conference call to outline next steps. We'll provide you with a production schedule for the program and begin to frame out editorial ideas and design concepts. This is a collaborative, consultative process between Strategic Communications and the client. Often, the writer and designer we've chosen for the project are involved in the call. A team consisting of project management, editorial, design, production, IT and distribution staff will service your account and will work closely with you to develop and manage the publication to ensure it is delivered on budget and on time.

**Q: What makes you unique?**
**A:** We have been creating content for major corporations and associations for more than 30

years; our quality is second to none. Combine this quality with our extensive experience and substantial in-house technology and you'll find that we offer a unique service that few communications firms can even come close to matching.

**Q: We want to stay in touch with our customers, but we're not sure we have enough to say on a regular basis? Is a communications program necessary?**
**A:** Almost all of our new clients share this concern, but in the end we find our biggest job is editing down the amount of content produced during the collaborative process in order to keep the messages brief and to the point. Our professional journalists will interview your staff members, conduct your research and explain your company's products and services more effectively than you might think possible. We've found that targeted, consistent communications are the best way to create a reader community and get your message across. Our programs position your company as an expert resource, providing useful information, not advertising clutter.

**Q: We tried to produce a quarterly newsletter, but were unable to maintain the schedule given our other responsibilities. How can you help us?**
**A:** We hear this comment frequently. Most of our clients are large companies with significant in-house resources, but even the largest companies find it is not cost-effective to maintain an in-house publishing resource. Over the years we've found that most in-house marketing and communications departments consist of a streamlined staff supported by outside professional organizations such as ours. We provide our clients with the depth and experience they need by serving as an extension of their in-house staff. Our team will work closely with your in-house team to define your communications goals and then develop a custom communications program integrated with your overall strategy. StratComm's programs stress an equal emphasis on technology, content, creative design and marketing. As a result, we couple the creation of robust, user-friendly communications, with the marketing expertise and business application that will help raise your company to the top of the market. Genuine commitment to your goals, coupled with in-depth publishing expertise, create the basis for Strategic Communications' national reputation as the custom publisher of choice.

**Q: Can we see samples of your work?**
**A:** Yes, samples are available on our website in PDF and HTML format. Please contact us to receive an expanded kit with hard copies of our publications. Our company has won nearly every major editorial and design award, including two Pulitzer Prize nominations.

**Q: Does Strategic Communications focus on certain markets?**
**A:** StratComm is solutions oriented: We help technology companies manage their communications in the midst of rapidly changing IT environments; energy companies deal with the changing landscape of deregulated markets; financial services firms during mergers and acquisitions; and health care companies inform their customers in the midst of new advances and breakthroughs. We have worked in virtually every industry and market, from retail and consumer goods to manufacturing and the hospitality industry. In the process of improving our clients' communications we save them time and money, and we help them to create demand, which should be the primary objective of any good communications program.

# EXHIBIT G



# The Commonwealth of Massachusetts
# William Francis Galvin

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

**STRATCOMM, INC.** Summary Screen

Help with this form

| Request a Certificate |

**The exact name of the Domestic Profit Corporation:** STRATCOMM, INC.

**Entity Type:** Domestic Profit Corporation

**Identification Number:** 000900821

**Date of Organization in Massachusetts:** 07/15/2005

**Current Fiscal Month / Day:** 12 / 31

**The location of its principal office in Massachusetts:**
No. and Street: ONE GATEWAY CENTER, SUITE 651
City or Town: NEWTON          State: MA   Zip: 02458   Country: USA

**If the business entity is organized wholly to do business outside Massachusetts, the location of that office:**
No. and Street:
City or Town:          State:          Zip:          Country:

**Name and address of the Registered Agent:**
Name: ROBERT J. GEORGE
No. and Street: ONE GATEWAY CENTER, SUITE 651
City or Town: NEWTON          State: MA   Zip: 02458   Country: USA

**The officers and all of the directors of the corporation:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code | Expiration<br>of Term |
|---|---|---|---|
| PRESIDENT | ROBERT J. GEORGE | ONE GATEWAY CENTER, SUITE 651<br>NEWTON, MA 02458 USA | |
| DIRECTOR | ROBERT J. GEORGE | ONE GATEWAY CENTER, SUITE 651<br>NEWTON, MA 02458 USA | |
| TREASURER | ROBERT J. GEORGE | ONE GATEWAY CENTER, SUITE 651<br>NEWTON, MA 02458 USA | |

| SECRETARY | ROBERT J. GEORGE | ONE GATEWAY CENTER, SUITE 651 NEWTON, MA 02458 USA | |
|---|---|---|---|

**business entity stock is publicly traded:** __

**The total number of shares and par value, if any, of each class of stock which the business entity is authorized to issue:**

| Class of Stock | Par Value Per Share Enter **0** if no Par | Total Authorized by Articles of Organization or Amendments | | Total Issued and Outstanding |
|---|---|---|---|---|
| | | *Num of Shares* | *Total Par Value* | *Num of Shares* |
| CNP | $0.00000 | 100,000 | $0.00 | 0 |
| CNP | $0.00000 | 175,000 | $0.00 | 0 |

__ Consent    __ Manufacturer    __ Confidential Data    __ Does Not Require Annual Report

__ Partnership    __ Resident Agent    __ For Profit    __ Merger Allowed

**Select a type of filing from below to view this business entity filings:**

ALL FILINGS
Administrative Dissolution
Annual Report
Application For Revival
Articles of Amendment

[ View Filings ]    [ New Search ]

| **Comments** |
|---|
| |

© 2001 - 2008 Commonwealth of Massachusetts
All Rights Reserved

❓
Help

# EXHIBIT H



# The Commonwealth of Massachusetts
# William Francis Galvin

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

## *STRATEGIC COMMUNICATIONS, INC.* Summary Screen

Help with this form

[ Request a Certificate ]

The exact name of the Domestic Profit Corporation: STRATEGIC COMMUNICATIONS, INC.

**Entity Type:** Domestic Profit Corporation

**Identification Number:** 000948996

**Date of Organization in Massachusetts:** 04/10/2007

**Current Fiscal Month / Day:** 12 / 31

**The location of its principal office in Massachusetts:**
No. and Street:     1 GATEWAY CENTER, STE 651
City or Town:      NEWTON          State: MA    Zip: 02458   Country: USA

**If the business entity is organized wholly to do business outside Massachusetts, the location of that office:**
No. and Street:
City or Town:         State:      Zip:      Country:

**Name and address of the Registered Agent:**
Name:          ROBERT J. GEORGE
No. and Street:     1 GATEWAY CENTER, STE 651
City or Town:      NEWTON          State: MA    Zip: 02458   Country: USA

**The officers and all of the directors of the corporation:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code | Expiration<br>of Term |
|---|---|---|---|
| PRESIDENT | ROBERT J. GEORGE | 1 GATEWAY CENTER, STE 651<br>NEWTON, MA 02458 USA | |
| TREASURER | ROBERT J. GEORGE | 1 GATEWAY CENTER, STE 651<br>NEWTON, MA 02458 USA | |
| SECRETARY | ROBERT J. GEORGE | 1 GATEWAY CENTER, STE 651<br>NEWTON, MA 02458 USA | |

| DIRECTOR | ROBERT J. GEORGE | 1 GATEWAY CENTER, STE 651<br>NEWTON, MA 02458 USA | |
|---|---|---|---|

**business entity stock is publicly traded:** __

**The total number of shares and par value, if any, of each class of stock which the business entity is authorized to issue:**

| Class of Stock | Par Value Per Share<br>Enter **0** if no Par | Total Authorized by Articles of Organization or Amendments<br>*Num of Shares* | *Total Par Value* | Total Issued and Outstanding<br>*Num of Shares* |
|---|---|---|---|---|
| CNP | $0.00000 | 275,000 | $0.00 | 0 |

| | | | |
|---|---|---|---|
| __ Consent | __ Manufacturer | __ Confidential Data | __ Does Not Require Annual Report |
| __ Partnership | X Resident Agent | X For Profit | __ Merger Allowed |

**Select a type of filing from below to view this business entity filings:**

ALL FILINGS
Administrative Dissolution
Annual Report
Application For Revival
Articles of Amendment

[ View Filings ]    [ New Search ]

| Comments |
|---|

© 2001 - 2008 Commonwealth of Massachusetts
All Rights Reserved

Help

1/7/2008 12:51 PM

# EXHIBIT I





CASE STUDIES

Time Life Books



The Vietnam Experience, twice nominated for a Pulitzer Prize in History

MORE

## Conduct groundbreaking research to develop a complete history of the Vietnam War for Time Life Books

**Client: Time Life Books**

**About Our Client:** Time Life Books is one of the most well-known creators of unique books and multi-media products. *The Vietnam Experience*, created and written entirely by Strategic Communications, became the second largest book series ever marketed by Time Life Books in its 50 year history.

**The Assignment:** Time Life Books approached us to create an in-depth series on the Vietnam War. The books needed to tell the complete story of the Vietnam War, beginning with "Before U.S. Involvement" through "America Withdraws." It was the most ambitious and comprehensive Vietnam research project ever conducted by a publishing firm. The project eventually developed into the 25-volume book series titled, *The Vietnam Experience*, which was twice nominated for a Pulitzer Prize in history.

**The Project Overview:**

- In order to provide a complete history of the Vietnam War, extensive research was required into records that, until the commencement of this project, were considered classified.
- Strategic Communications conducted exhaustive research and managed a massive de-classification program to create the books the *New York Times* called, "The source on the subject of the Vietnam War."
- Teams were also required to conduct vast numbers of interviews of veterans and government officials in the U.S. and abroad to produce what the *Washington Post* hailed as, "The first truly dispassionate account of the Vietnam War."

**The Strategic Communications Results:**

- Fifty-five of our writers spent nearly 12 years conducting full-time research to assemble these books with the capstone volume titled, *The American Experience in Vietnam*.
- John Kenneth Galbraith twice nominated the books for a Pulitzer Prize in History.
- More than 700,000 people subscribed to the series and over 11 million copies were sold.
- General Westmoreland himself read through and wrote extensive notes on every page of the volumes describing his years of command in Vietnam.