IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                        )
COLE RAYWID & BRAVERMAN, LLP,           )
       Plaintiff                        )
                                        )
v.                                      )
                                        )
ROBERT J. GEORGE, CUSTOM                )
COMMUNICATIONS INTERNATIONAL, INC.,     ) Civil Action No. 07-CV-2242-JR
BOSTON PUBLISHING COMPANY, INC.,        )
STRATCOMM, INC., STRATEGIC              )
COMMUNICATIONS, INC., CUSTOM            )
COMMUNICATIONS, LLC                     )
       Defendants                       )
                                        )
```

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, BOSTON PUBLISHING COMPANY, INC.'S, STRATCOMM, INC.'S, STRATEGIC COMMUNICATIONS, INC.'S, AND CUSTOM COMMUNICATIONS, LLC'S, MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendants, Boston Publishing Company, Inc. ("Boston Publishing"), StratComm, Inc. ("StratComm"), Strategic Communications, Inc.("Strategic Communications") and Custom Communications, LLC ("CC LLC") (collectively the "Defendants") submit this memorandum of law in support of its motion to dismiss for lack of personal jurisdiction.

**INTRODUCTION**

This case is a fee dispute between Cole Raywid & Braverman, LLP ("Cole Raywid"), a Washington, D.C. law firm and Custom Communications, International, Inc. ("CCI") a now dissolved Massachusetts corporation. In attempt to collect these alleged unpaid legal fees, Cole Raywid has ignored completely that its fee agreement is with CCI alone and, has instead, cast the widest possible net to recover these fees from unrelated corporations that are not parties to the

fee agreement and are separate and distinct legal entities that never had any relationship with Cole Raywid whatsoever.

Essentially conceding--which it must--that this Court does not have personal jurisdiction over the Defendants based on their individual connections to the forum, Cole Raywid instead asserts, rather half-heartedly, that this Court has personal jurisdiction over the Defendants under a variety of concocted theories designed simply to recover money from whatever source Cole Raywid can extort it from. Cole Raywid, without a single factual allegation to support its claims, has asserted that the Defendants are either (1) the alter egos of CCI or Robert George ("George") or (2) the successors-in-interest to CCI.[1] Upon this quicksand, Cole Raywid has built its claims against the Defendants.[2] Because the Defendants are not the alter egos of CCI or George or the successor-in-interest to CCI, Cole Raywid's claims against the Defendants should be dismissed for lack of personal jurisdiction.

**FACTS**

1. <u>Custom Communications International, Inc. and Robert J. George April 2001 through November 2003.</u>

On April 13, 2001, CCI was incorporated in the Commonwealth of Massachusetts. *See* Affidavit of Robert J. George ("George Affidavit") ¶ 5; and <u>see</u> Affidavit of Andrew E. Goloboy, Esquire ("Goloboy Affidavit") ¶ 1. CCI's primary business was corporate publications in the financial sector. <u>See</u> George Affidavit ¶ 5. George owned 100% of the stock of CCI. <u>Id.</u> When CCI was incorporated, George had a wealth of experience in the publishing industry including, but not limited to, the publication of the bestselling book series, "The Vietnam Experience," in

---

[1] Cole Raywid invites this Honorable Court to "take its pick."

[2] Cole Raywid has also filed claims against the Defendants for Unjust Enrichment and Fraudulent Transfer. Since there is no assertion that the Court has personal jurisdiction over the Defendants based on their individual contacts with the forum, these counts must be dismissed if it determined that the Defendants are not the alter ego of George or CCI or successor-in-interest of CCI because there would be no personal jurisdiction over the Defendants. Additionally, the Defendants deny that they were unjustly enriched by Cole Raywid's services or the beneficiary of a fraudulent transfer on the part of CCI or George.

association with Time Life.  Id at ¶¶ 2 & 3.  CCI's largest clients included Deloite & Touche

("Deloite") and Goldman Sachs ("Goldman").  Id at ¶ 6.

The attacks on the World Trade Center in New York on September 11, 2001 ("September

11th"), devastated Deloite's and Goldman's business.  Id at ¶¶ 6-7.  Deloite and Goldman were

each located in or around the World Trade Center.  Id at ¶ 6.  Following the events of September

11th, and due to ensuing uncertainty, Deloite and Goldman suspended, and ultimately ended,

their business relationships with CCI.  Id at ¶ 7.  The loss of Deloite and Goldman, combined

with the loss of other financial sector clients, devastated CCI's business.  Indeed, CCI lost

approximately $1.6 million dollars in revenue as a result of September 11th.  Id at ¶ 8.

After the loss of Deloite, Goldman and others, CCI relied on a contract that it had with

the National Society of the Daughters of the America Revolution ("NSDAR") to continue

business operations.  Id at ¶ 9.  Eventually, NSDAR terminated its contract with CCI at great

financial detriment to CCI.  Id at ¶ 10.

A lawsuit ensued between NSDAR and CCI.  Cole Raywid represented CCI in the

NSDAR litigation.  Id at ¶ 11.  CCI and Cole Raywid entered into a fee agreement.  See Goloboy

Affidavit at ¶ 2.  The NSDAR litigation was resolved through a settlement.  See George

Affidavit at ¶ 12.

CCI received less in the settlement with NSDAR than Cole Raywid's bills for attorneys'

fees.  Id.  CCI's settlement funds were wired to Cole Raywid, but Cole Raywid refused to release

CCI's settlement funds to CCI unless George signed a promissory note personally guaranteeing

the performance of any payment obligations on behalf of CCI.  Id at ¶¶ 13-14; See Goloboy

Affidavit at ¶ 3.  Cole Raywid retained a large portion of the settlement funds to pay a portion of

its bill.  Id at ¶¶ 13-14; See Goloboy Affidavit at ¶ 3.

Shortly after the resolution of the lawsuit between NSDAR and CCI, and after receiving a loan from the United States Small Business Administration ("SBA") loan through its disaster loan program, CCI was forced to dissolve because of its inability to regain or add new clients. See George Affidavit at ¶¶ 15-16; See Goloboy Affidavit at ¶ 4. On November 13, 2003, CCI was dissolved in the Commonwealth of Massachusetts. See George Affidavit at ¶ 6; See Goloboy Affidavit ¶ 5.

2.    George's activities following the dissolution of CCI from November 2003 through July 2005.

Following the dissolution of CCI, George was financially devastated personally. See George Affidavit at ¶ 18. He was required to continue to payoff the SBA loan that he personally guaranteed. Id at ¶ 16. Ultimately, George sold his personal residence to payoff the SBA loan.

For a short period of time, George was as a consultant in the publishing industry. Id. at ¶ 19. Then, in May 2004, George stopped working in the publishing industry and became a full time employee of InfoGraphix located in Brighton, Massachusetts. Id at ¶ 20. The primary assets of CCI--two printers and laptop--were sold to InfoGraphix. Id at ¶ 21. George remained a fulltime employee of InfoGraphix until July 2005. Id at ¶ 22. George's job responsibilities at InfoGraphix were selling advertisements and editing content. Id at ¶ 22. In 2005, George began to recover financially and decided to return to the publishing industry--20 months after the dissolution of CCI. Id at ¶ 23.

3.    George's present business entities from April 2005 to the present.

George currently operates a publishing business under the corporate banner of "StratComm," which was incorporated in July 2005. Id at ¶ 6; See Goloboy Affidavit at ¶ 6. StratComm focuses its publishing in the information technology ("IT") sector. Id at ¶ 23. Strategic Communications and Boston Publishing (George's other two companies) were

incorporated in 2007 to preserve and market the name "Boston Publishing." See George

Affidavit at ¶ 1; See Goloboy Affidavit ¶¶ 7-8 . Strategic Communications and Boston

Publishing function as "d/b/a's" of StratComm. See George Affidavit at ¶ 1.

George previously owned Boston Publishing from 1978 to 1998. Id at ¶ 3. In 1998,

Boston Publishing closed following the closure of Time-Life books due to the dwindling interest

in historical books. Id at ¶ 4. It was important for George to preserve and market the name

"Boston Publishing" again in 2007 because Boston Publishing gained a strong reputation within

the historical publishing industry in the 1980's and 1990's. Id at ¶¶ 3,25. Boston Publishing

published historical books for Time-Life Books, including "The Vietnam Experience." Id at ¶ 3.

Currently, all revenues from Boston Publishing and Strategic Communications flow

through StratComm. Id at ¶¶ 1, 27. StratComm--through Strategic Communications--focuses

on publishing in the IT sector with its largest client being IBM. Id at ¶¶ 23, 31. StratComm--

through Boston Publishing--focuses solely on publishing historical books, a sector that is

rebounding after its collapse in the 1990's.

CC LLC was formed in 1996 and has never been an active entity. Id at ¶¶ 1, 21. It has

no clients, employees, or business accounts. Id at ¶ 28.

The Defendants were not started with funds from CCI. Id at ¶ 29. The Defendants do not

use the same offices CCI formerly used. Id at ¶¶ 5,27. The assets of CCI were not transferred to

the Defendants. Id at ¶ 30. The Defendants did not merge with CCI either formally or

informally. Id at ¶ 32.

StratComm has only two customers that were previously customers of CCI: IBM and

Goldman. Id at ¶ 31. IBM was a small customer of CCI and now is one of StratComm's largest

customers. Id. Goldman was one CCI's largest customers and is now one of StratComm's

5

smallest customers.  Id.  Additionally, six years elapsed between Goldman leaving CCI and then

hiring StratComm.  Id.

The Defendants do not have any clients in Washington, D.C.  Id  at ¶¶ 36-37.  The

Defendants do not have any contracts in Washington, D.C.  Id.  The Defendants do not have any

bank accounts in Washington, D.C.  Id.  The Defendants do not have any employees in

Washington, D.C.  Id.  The Defendants do not have any officers or directors who reside in

Washington, D.C.  Id.  The Defendants do not have a mailing address in Washington, D.C.  Id.

The Defendants do not have any real or personal property in Washington, DC.  Id.

## ARGUMENT

I.     **THE DISTRICT COURT OF THE DISTRICT OF COLUMBIA DOES NOT
       HAVE PERSONAL JURIS DICTION OVER BOSTON PUBLISHING, INC.,
       STRATCOMM, INC., STRATEGIC COMMUNICATIONS, INC. AND
       CUSTOM COMMUNICATIONS, LLC.**

1.  The District of Columbia does not have personal jurisdiction over the Defendants
    under Cole Raywid's alter ego theory.[3]

None of the Defendants are the alter ego of CCI[4] or George; therefore the Court cannot

assert personal jurisdiction over them based on a promissory note that CCI and George signed.[5]

The plaintiff bears the burden of proving a *prima facie* case of personal jurisdiction over a

nonresident defendant by alleging specific acts that link the nonresident defendant to the forum.

Johnson-Tanner v. First Cash Financial Services, Inc., 239 F. Supp.2d 34, 37 (D.D.C. 2003).

The District of Columbia's long-arm statute authorizes personal jurisdiction to the fullest extent

---

[3] Although Cole Raywid does not clearly articulate its position, the Defendants assume that Cole Raywid believes
that this Court has personal jurisdiction over all of the Defendants because two of the defendants, CCI and George,
signed a promissory note that contained a consent to jurisdiction clause.  The Defendants, however (except for CCI
and George) were not parties to the promissory note and consent to jurisdiction clause and, therefore, it does not
bind them.
[4] CCI has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that as a dissolved
corporation the statute of limitations has expired for COLE RAYWID to bring claims against CCI.
[5] Count VII of the Amended Complaint attempts to place liability upon each of the defendants for all of the claims
against CCI and George under the alter ego theory.

allowed by the Due Process Clause.  Id at 37.  The Court does not need to treat all of the

plaintiff's allegations as true when determining whether personal jurisdiction exists.  Roz

Trading Ltd v. ZeroMax Group, Inc, et al., 517 F. Supp.2d 377, 381 (D.D.C. 2007).  The Court

"may receive and weigh affidavits and any other relevant matter to assist in determining

jurisdiction facts."  Id. (quoting United States v. Phillp Morris, Inc.,116 F. Supp 2d 116, 120 n. 4

(D.D.C. 2000)).

      Ordinarily, contacts of a parent corporation cannot be attributed to affiliated corporations.

Johnson-Tanner, 239 F. Supp. 2d  at 38.[6]  An exception exists when the party contesting

jurisdiction is an alter ego of an affiliated corporation.  Id.  If this is the case, then the contacts of

the affiliated corporation can be attributed to the other corporate entity.  Id.  The Court makes a

determination of law as to whether one corporation is the alter ego of another.  Id; Shapiro,

Lifschitz & Schram, P.C. v. Hazard, 90 F. Supp.2d 15, 22 (D.D.C. 2000).

      To determine whether a corporation is an alter ego, the Court must evaluate: (1) whether

there is such a unity of interest and ownership that the separate personalities of the corporations

no longer exist ("Unity Prong"); and (2) whether an inequitable result would follow if the alleged

wrongful acts of one corporation are not attributed to the other affiliated corporations ("Fairness

Prong").  Johnson-Tanner, 239 F. Supp.2d at 38.

      In evaluating the Unity Prong, the Court must analyze whether the companies (1)

maintain separate corporate minutes and records; (2) fail to observe corporate formalities; (3)

commingle funds; (4) use the same office location; (5) use joint accounts or payroll; (6) act

exclusively in the interest of the other; and (7) transfer personnel back and forth.  Id at 39;

Shapiro, Lifschitz & Schram, P.C., 90 F. Supp.2d at 23.  In evaluating the Fairness Prong, the

---

[6]  The Defendants also assume that the "contact" with the District of Columbia that Cole Raywid is relying on is the promissory note that CCI and George signed with a consent to jurisdiction clause.

Court focuses on the notion that "an individual businessman cannot hide from the normal consequences of carefree entrepreneuring by doing so through a corporate shell." Id at 26 quoting Labadie Coal, Co. v. Black, 672 F.2d 92, 99 (D.C.Cir. 1982).   "The Court should consider the entire picture of the relationship between the two corporations, including the many factors listed in the formalities prong of the test." Id.

        a.   The Defendants are not the alter egos of CCI, therefore CCI's contacts cannot be imputed to the Defendants for the purpose of establishing personal jurisdiction.

None of the Defendants is an alter ego of CCI.  CCI dissolved in November 2003.  The Defendants--except CC LLC which has always been a shell with no operations since its creation in 1996--were incorporated between 2005 and 2007.  Consequently, there is, at least, a two year gap between the dissolution of CCI and the incorporation of George's new business entities.  Therefore, it is impossible for the operating Defendants to have any overlap with CCI.

1.      The Unity Prong

Cole Raywid cannot satisfy the Unity Prong of the alter ego test.  The Defendants clearly have a corporate existence separate and apart from CCI's former corporate existence.  CCI, a dissolved corporation, cannot--and does not--exert control over the Defendants.

The Defendants maintain separate corporate minutes and records from CCI.  The Defendants observe corporate formalities.  The Defendants do not commingle funds with CCI.  The Defendants do not use CCI's former office.  The Defendants do not use joint accounts or payroll with CCI.  The Defendants do not act exclusively in the interest of CCI.  The Defendants do not transfer employees between CCI and the Defendants.

Moreover, the Defendants' present business is different from CCI's former business.  Namely, the Defendants publish content from entirely different and distinct sectors of the publishing industry than CCI published.  CCI focused its publishing on the financial sector.

Boston Publishing specializes in the publication of historical books and periodicals. StratComm and Strategic Communications specialize in publishing for the IT sector.[7]

The only common thread among CCI and the Defendants is that George owned CCI prior to its dissolution and he now owns the Defendants. Clearly, this alone is not enough to conclude that the Defendants are the alter egos of CCI. As such, Cole Raywid fails to satisfy the Unity Prong.

### 2.    The Fairness Prong

Cole Raywid cannot satisfy the Fairness Prong of the alter ego test. It would not be inequitable to Cole Raywid if CCI's contacts were not attributed to any of the Defendants.[8] In fact, it would be inequitable to attribute the contacts of CCI to the Defendants because there is absolutely no actual or temporal connection between CCI and the Defendants.

Cole Raywid entered into a Fee Agreement with CCI. *See* Exhibit A to Amended Complaint. Cole Raywid, like every other law firm, knew that there is always a risk that a company can become insolvent and dissolve. Cole Raywid accepted that risk. Additionally, Cole Raywid knew the risk factors were high that CCI may become insolvent since it was devastated by the events of September 11th. Simply because George opened subsequent business after the dissolution of CCI does not mean that his new separate legal entities somehow assume the former obligations of the now dissolved CCI. This is especially true given that George held a full-time job outside the publishing industry for almost two years before he even attempted to get back into the publishing business following September 11th.

---

[7]  CC LLC never had any business operations whatsoever.

[8]  Boston Publishing, StratComm, Strategic Communications, and CC LLC have no contacts with the District of Columbia and Cole Raywid has not alleged any contacts between Boston Publishing and the District of Columbia. Cole Raywid only justification for personal jurisdiction over the defendants is its alter ego and successor in interest claims – which each lack specific allegations.

Cole Raywid fails to meet either prong of the alter ego test, therefore CCI's contacts should not be imputed to the Defendants and all claims against the Defendants should be dismissed for lack of personal jurisdiction.

        b.        The Defendants are not alter egos of George, therefore, George's contacts <u>cannot be attributed to the Defendants.</u>

None of the  Defendants are the alter ego of George, therefore the Court cannot assert personal jurisdiction over them based on the imputation of George's contacts with the District of Columbia.  In essence, Cole Raywid is asking the Court to pierce the corporate veil of the Defendants and determine that the Defendants are the alter ego of George individually.  Cole Raywid alleges no facts to support that the Defendants are the alter ego of George.

## 1.      The Unity Prong

Cole Raywid's allegations do not satisfy the Unity Prong of the alter ego test.  There is not such a unity between George and the Defendants that makes it impossible to differentiate the separate personalities.  George is the owner and president of the Defendants.  George is paid a salary and bonuses commensurate with the success of the Defendants.  George maintains his own personal accounts separate from the Defendants' corporate accounts.  George pays his personal obligations from his personal accounts and not from the Defendants' bank accounts.  Cole Raywid's Amended Complaint contains zero specific allegations that would meet the Unity Prong of the alter ego test.

## 2.      The Fairness Prong

Cole Raywid's allegations do not satisfy the Fairness Prong of the alter ego test.  It would not be inequitable to Cole Raywid if George's contacts were not attributed to the Defendants.  Attributing George's individual contacts with the District of Columbia to the Defendants would

be inequitable.  George's only individual contact with the District of Columbia is the Promissory

Note allegedly guaranteed by him individually[9].  <u>See</u> Exhibit B of Amended Complaint.

George was individually devastated by the events of September 11th, and has spent many

years trying to rebuild himself financially.  His company, CCI, was devastated by September

11th.  George was forced to dissolve CCI, sell its assets, find full time work at a new corporation,

and sell his home to pay off the SBA disaster loan he received following September 11th.  After

several years, George has finally opened new and distinct companies, that are not his alter ego,

and it would be fundamentally unfair and inequitable to attribute his contacts with the District of

Columbia to the Defendants.  Cole Raywid cannot satisfy the Fairness Prong of the alter ego test.

      2.   The District of Columbia does not have personal jurisdiction over the Defendants
           <u>under Cole Raywid's successor in interest theory</u>.

None of the Defendants are the successors in interest of CCI[10]; therefore the Court cannot

assert personal jurisdiction over them based on the imputation of CCI's contacts with the District

of Columbia[11].  A successor in interest is defined as, "[o]ne who follows another in ownership or

control of property."  <u>Garner, Bryan, Black's Law Dictionary, New Pocket Addition</u>, West

Group, 1996.

In the Amended Complaint, Cole Raywid argues that any publishing company that

George involves himself with is automatically a successor in interest of either George or CCI.

This assertion is untrue and is not supported by either fact or law.  The successor-in-interest

theory is another inappropriate attempt by Cole Raywid to cast the widest possible net in a

---

[9] George has filed an Answer to the Amended Complaint and has plead the affirmative defense of lack of
consideration.  George contends that Cole Raywid inappropriately withheld the disbursement of settlement proceeds
to CCI and only released CCI's funds when George agreed to sign a promissory note.
[10] CCI has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that as a dissolved
corporation the statute of limitations has expired for Cole Raywid to bring claims against CCI.
[11] Count VI of the Amended Complaint attempts to place liability upon each of the defendants for all of the claims
against CCI under the successor in interest theory.

desperate attempt to collect allegedly unpaid legal fees on behalf of CCI. To attribute CCI's

contacts to any of the Defendants would be fundamentally inequitable.

The question of whether it is ever possible to use the successor-in-interest theory to

confer personal jurisdiction upon a party appears to remain – at least partially – an unanswered

question in the District of Columbia courts. In McDaniel v. Armstrong World Industries, 603 F.

Supp.2d (D.D.C. 1985), the District Court determined that to impute the contacts to a successor-

in-interest there must be a proffer of some evidence to support the assertion to meet the *prima*

*facie* burden. However, the Court did not fully examine whether this theory comports with due

process.

The Amended Complaint fails to set forth adequate allegations to support its contention

that there is personal jurisdiction over any of the Defendants based on Cole Raywid's successor-

in-interest theory. The Amended Complaint contains one allegation against each Defendant to

support this contention:

> On information and belief, Boston Publishing has absorbed, carried on the
> activities of and/or successor-in-interest to CCI, such that Boston Publishing is
> liable for the obligations of CCI by way of a *de facto* merger; on the basis
> that Boston Publishing is a mere continuation of the CCI business; and/or
> on the basis that Boston Publishing was formed in effort to avoid the
> liabilities of CCI, its predecessor. See Amended Complaint ¶ 38.

> On information and belief, StratComm and Strategic Communications have
> absorbed, carried on the activities of, and/or are successors-in-interest to CCI,
> such that they are liable for the obligations of CCI by way of *de facto* merger;
> on the basis that they are Jointly a mere continuation of the CCI business; and/or
> on the basis that they were formed in an effort to avoid the liability of CCI, their
> predecessor. Id at ¶ 43.

> On information and belief, CCI LLC is a limited liability company controlled
> by Defendant George and engaged in business and/or holdings associated with
> publishing and/or strategic communications and is related in the operations and
> interest to CCI. On information and belief, CCI LLC has absorbed, carried on
> the activities of, and/or is the successor-in-interest to CCI, such that CCI LLC
> liable for the obligations of CCI by way of a *de facto* merger, and/or on the

basis that CCI LLC is a mere continuation of the CCI business.  Id at ¶ 44.

The allegations are simply based upon Cole Raywid's information and belief and are not

supported by any specific allegations and assume an imaginary merger between each of the

Defendants and CCI.  Cole Raywid now claims that all of the defendants are "jointly severally,

or jointly and severally liable as successors-in-interest to all the liabilities of defendant CCI."

See Amended Complaint at ¶ 79.  This statement is factually and legally inaccurate.

Cole Raywid would have the Court believe that CCI simply changed it shingle on its

office one day from CCI to either Boston Publishing , StratComm, Strategic Communications or

CC LLC in an attempt to avoid CCI's liabilities to Cole Raywid.  This is not true.

As already set forth herein, CCI dissolved in November 2003, after its inability to recover

from the events of September 11th.  CCI's principle, George, went to work full time for another

company during the 20 month period in between the dissolution of CCI and the incorporation of

StratComm.  Cole Raywid completely ignores the gap in time between CCI's dissolution and

StratComm's incorporation.  Additionally, the physical assets of CCI were sold to an unrelated

third party where George worked; CCI's customers were completely lost (only two have

subsequently returned to StratComm); the Defendants offices are at a different location; and,

most importantly, the Defendants specialize in different sectors of the publishing industry.

The Defendants are new entities[12] and were built through the hard work of George and

not through the name or property of CCI.  The Defendants are not the successors-in-interest of

CCI and it would not comport with due process to attribute CCI's contacts to the Defendants.

Therefore the claims against the Defendants should be dismissed for a lack of personal

jurisdiction.

---

[12] Except for CC LLC which predates CCI and as stated herein has never had any customers, accounts, or
employees.

WHEREFORE, Defendants, Boston Publishing Company, Inc., StratComm, Inc.,

Strategic Communications, Inc., and Custom Communications, LLC pray that the Court takes the

following action:

(a)    that the Court dismisses Count III (Unjust Enrichment) of the Amended

Complaint with respect to Boston Publishing, StratComm, Strategic Communications, and CC

LLC;

(b)    that the Court dismisses Count V (Fraudulent Transfer) of the Amended

Complaint with respect to Boston Publishing, StratComm, Strategic Communications, and CC

LLC;

(c)    that the Court dismisses Count VI (Contract-Fee Agreement; Contract Guarantee;

Unjust Enrichment; Money Due on Account (Successors in Interest)) in its entirety;

(d)    that the Court dismisses Count VII (Contract-Fee Agreement; Contract

Guarantee; Unjust Enrichment; Money Due on Account (Alter Ego)) in its entirety;

(e)    that the Court dismiss all claims against Boston Publishing, StratComm, Strategic

Communications, and CC LLC  with prejudice; and

(f)    any other relief the Court deems appropriate and just.

Respectfully Submitted,

BOSTON PUBLISHING COMPANY, INC,
STRATCOMM, INC., STRATEGIC
COMMUNICATIONS, INC, AND CUSTOM
COMMUNICATIONS LLC,

By its attorneys,

/s/ William H. Anderson
William H. Anderson, Esquire (DC Bar No. 502380)
CUNEO, GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Phone: 202-789-3960
Fax: 202-789-1813

/s/ Andrew E. Goloboy
RONALD W. DUNBAR, JR (*pro hac vice admitted*)
ANDREW E. GOLOBOY (*pro hac vice admitted*)
DUNBAR LAW P.C.
10 High Street, Suite 700
Boston, MA 02110
Phone: 617-244-3550
Fax: 617-244-6363

Defendants Addresses:
Boston Publishing Company, Inc.          StratComm Inc.
One Gateway Center                       One Gateway Center
Newton, MA 02458                         Newton, MA 02458

Strategic Communications, Inc.           Custom Communications, LLC
One Gateway Center                       One Gateway Center
Newton, MA 02458                         Newton, MA 02458

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 22, 2008.

/S/ Andrew E. Goloboy
Andrew E. Goloboy