IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| COLE RAYWID & BRAVERMAN, LLP,<br>　　　Plaintiff | ) <br> ) <br> ) <br> ) |
| v. | ) <br> ) |
| ROBERT J. GEORGE, CUSTOM<br>COMMUNICATIONS INTERNATIONAL, INC.,<br>BOSTON PUBLISHING COMPANY, INC.,<br>STRATCOMM, INC., STRATEGIC<br>COMMUNICATIONS, INC., CUSTOM<br>COMMUNICATIONS, LLC<br>　　　Defendants | ) <br> ) Civil Action No. 07-CV-2242-JR <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**AFFIDAVIT OF ROBERT J. GEORGE IN SUPPORT OF DEFENDANTS,
BOSTON PUBLISHING COMPANY, INC.'S, STRATCOMM, INC.'S,
STRATEGIC COMMUNICATIONS, INC.'S, AND CUSTOM
COMMUNICATIONS, LLC'S, MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION**

I, Robert J. George, hereby declare as follows:

1.　　　I am the current owner and president of StratComm, Inc. ("StratComm"),

which was incorporated in 2005.  In 2005, I could not secure the preferred corporate

name Strategic Communications, Inc ("Strategic Communications").  In 2007, I was able

to incorporate the corporate name Strategic Communications, Inc.  Additionally, I was

able to reacquire and reincorporate the corporate name Boston Publishing Company, Inc.

("Boston Publishing").  All three of the entities function under the banner of StratComm.

In essence, StratComm does business with two publishing imprints: Strategic

Communications (business publications) and Boston Publishing (history publications).

There is one set of books; one tax return filed each year under the name StratComm; and

one office locations, One Gateway Center, Newton, Massachusetts.

2.      I have worked in the publishing industry for more than 35 years and reside and work in the Commonwealth of Massachusetts.

3.      From 1978 to 1998, I owned and was the president of Boston Publishing. Boston Publishing focused on publishing historical publications often in conjunction with Time-Life Books.  The most well-known of these publications is "The Vietnam Experience."

4.      In the 1990's, there was a decline in the popularity of historical publications and Time-Life Books closed.  Shortly thereafter, I sold Boston Publishing to another company, Hanover Direct.

5.      On April 13, 2001, I incorporated Custom Communications International, Inc. ("CCI") in the Commonwealth of Massachusetts.  I was the owner and president of CCI.  CCI focused its publishing on corporate publications primarily in the financial sector.  CCI was located at 85 Wells Street, Newton, Massachusetts.

6.      CCI's largest clients were Deloite & Touche ("Deloite") and Goldman Sachs ("Goldman").  Both Deloite and Goldman were located in the immediate area of the World Trade Center in New York.

7.      After September 11, 2001 ("September 11"), both Deloite and Goldman were forced to relocate.  As a result both companies suspended and eventually terminated their contracts with CCI.

8.      CCI was devastated by the events of September 11 and lost approximately $1.6 million dollars in revenue as a result of the attacks.

9.      With most of CCI's customers in turmoil following September 11, CCI was forced to rely on a contact with the National Society of the Daughters of the American Revolution ("NSDAR").

10.     NSDAR terminated its contract with CCI for reasons unrelated to CCI's performance.  CCI threatened to sue to recover its damages.  NSDAR, however, filed a lawsuit in Washington, D.C. ("DC")

11.     CCI was forced to retain counsel in DC.  CCI retained Cole Raywid & Braverman, LLP ("Cole Raywid").

12.     The case lasted for approximately four months and resulted in a settlement in favor of CCI.  However, Cole Raywid's legal fees of more than $200,000, exceeded the amount recovered in settlement.

13.     Cole Raywid requested CCI's wiring instructions so that the funds could be wired to CCI.  Cole Raywid then, however, refused to wire the funds to CCI until a promissory note was executed by CCI guaranteeing payment of the remaining fees.

14.     Additionally, Cole Raywid refused to release the settlement funds to CCI until I signed a personal guarantee guaranteeing the performance of the CCI, despite the fact that I was not Cole Raywid's client.

15.     In an attempt to save CCI, CCI qualified for and received a United States Small Business Administration Federal Disaster Loan through a 9/11 disaster relief program.  The loan of $442,000 was intended to provide bridge financing to CCI until the company's clients relocated.  I was forced to personally guarantee this loan.

16.     Despite my efforts, I was not able to save CCI and forced to dissolve CCI. I was required to sell my personal residence to pay back the Small Business Administration Loan.

17.     On November 13, 2003, CCI was dissolved in accordance with the laws of the Commonwealth of Massachusetts.

18.     Following the dissolution of CCI, I was personally devastated financially.

19.     For a short time after the dissolution of CCI, I worked as a consultant.

20.     In May 2004, I left the publishing industry and accepted a full time position with a corporation in Brighton, Massachusetts, InfoGraphix. My job responsibilities included selling advertisements and editing content.

21.     Most of CCI's assets were sold to InfoGraphix.  These assets consisted of two printers and a laptop.

22.     I worked fulltime for InfoGraphix until July 2005.  At which time, I decided to return to publishing industry.  My job responsibilities included selling advertising and editing content.

23.     In July 2005, I incorporated StratComm, which is a publishing company that specializes in publishing for the information technology ("IT") sector.

24.     In April 2007, I incorporated Boston Publishing  and Strategic Communications.

25.     I reacquired the name Boston Publishing, because there has been resurgence in historical publications and Boston Publishing was a reputable name in the industry.

26.    I incorporated Strategic Communications because the name became available and I preferred it to the StratComm name I was forced to accept when I incorporated during July 2005.

27.    I am the owner and president of StratComm, Boston Publishing, and Strategic Communications.  All of these companies operate under the banner of StratComm and are headquartered at One Gateway Center, Newton Massachusetts.

28.    Additionally, in 1996, I formed CC LLC.  CC LLC has never been an active entity.  It has no employees, customers, or business accounts.

29.    The Defendants were not formed with funds from CCI, because CCI had no funds when it was dissolved.

30.    CCI's assets were not transferred to the Defendants, because there were no assets of CCI when the Defendants were incorporated.

31.    Currently, the Defendants service two former customers of CCI: IBM and Goldman Sachs.  IBM was one of CCI's smaller customers.  It is now one of StratComm's larger customers.  Goldman Sachs was CCI's largest customer but following September 11 the contract was terminated and after six years Goldman Sachs hired StratComm, but is one of its smaller customers.

32.    No merger, either formal or informal ever took place, between CCI and any or all of the Defendants.

33.    I maintain separate personal checking, saving, and credit card accounts apart from the StratComm accounts.

34.    I only receive a salary from StratComm.  I do not treat StratComm as a personal "piggy bank."

5

35.     My personal affairs and the corporate affairs of StratComm are separate and distinct.

36.     StratComm does not have any clients in DC.  StratComm do not have any contracts in DC.  StratComm does not have any bank accounts in DC.  StratComm does not have any employees in DC.  StratComm does not have any officers or directs in DC.  StratComm does not have a mailing address in DC.  StratComm does not have any real or personal property in DC.

37.     CC LLC does not have any clients in DC.  CC LLC does not have any contracts in DC.  CC LLC does not have any bank accounts in DC.  CC LLC does not have any employees in DC.  CC LLC does not have any officers or directs in DC.  CC LLC does not have a mailing address in DC.  CC LLC does not have any real or personal property in DC.

38.     CCI no longer exists.  The reference to CCI on Boston Publishing's website is a stray word and is not an intended use or promotion of CCI's name.  The BPC web-site was created using CCI's former website as a template.  The statement on Boston Publishing's website welcomes visitors to view other StratComm websites, the CCI stray word was left in place accidentally.

39.     StratComm's respective websites appropriately reference my resume and experience and do not attempt to use or promote CCI's corporate accomplishments and name.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 22nd day of February 2008.

/s/ Robert J. George
Robert J. George