IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|                                                      |     |
|------------------------------------------------------|-----|
| COLE RAYWID & BRAVERMAN, LLP,                         | )   |
|    Plaintiff,                                         | )   |
|                                                      | )   |
| v.                                                   | )   |
|                                                      | )   |
| ROBERT J. GEORGE, CUSTOM                              | )   |
| COMMUNICATIONS INTERNATIONAL, INC.,                  | )   Civil Action No. 07-CV-2242-JR |
| BOSTON PUBLISHING COMPANY, INC.,                     | )   |
| STRATCOMM, INC., STRATEGIC                            | )   |
| COMMUNICATIONS, INC., CUSTOM                          | )   |
| COMMUNICATIONS, LLC                                  | )   |
|    Defendants.                                       | )   |

_____)

<u>DEFENDANTS', BOSTON PUBLISHING COMPANY, INC'S, STRATCOMM
INC.'S, STRATEGIC COMMUNICATION'S, CUSTOM COMMUNICATIONS,
LLC'S, AND CUSTOM COMMUNICATIONS INTERNATIONAL, INC.'S  REPLY
MEMORANDUM TO PLAINTIFF'S CONSOLIDATED OPPOSITION TO THEIR
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND
PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>

Defendants, Boston Publishing Company, Inc ("BPC"), StratComm, Inc.

("StratComm"), Strategic Communications, Inc. ("Strategic Communications"), and

Custom Communications, LLC (collectively the "Defendants") and Custom

Communications International, Inc. ("CCI"), hereby submit this Reply to the Plaintiff,

Cole Raywid & Braverman, LLP's ("Cole Raywid") Consolidated Opposition to the

Defendants Motions To Dismiss For Lack of Personal Jurisdiction and Motion to Dismiss

Pursuant to Fed. Civ. P. 12(b)(6) ("Opposition") to address the numerous

misstatements of both law and fact contained in the Opposition.  Defendants incorporate

the Second Affidavit of Robert George into this Reply.

<u>Introduction</u>

As stated in the Defendants' original motion to dismiss for lack of personal jurisdiction, the instant action is a simple fee dispute between Cole Raywid and CCI. Cole Raywid's Opposition fails to contradict the evidence and facts contained in the motions to dismiss; Cole Raywid has simply engaged in the classic document drop hoping to overwhelm the Court with the volume of computer printouts it incorporates into its Opposition.  Despite Cole Raywid's efforts, the facts remain unchanged and Cole Raywid has failed to meet its burden to establish that this Court has personal jurisdiction over the BPC, StratComm, Strategic Communications, and Custom Communications, LLC.  In fact, Cole Raywid fails to supply a single piece of evidence to support personal jurisdiction over Custom Communications, LLC.

Additionally, Cole Raywid failed  to submit any facts or testimony to support its contention that the claims against CCI should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  It is an undisputed fact that CCI dissolved in November 2003.  It is also black letter law that all claims against a dissolved Massachusetts corporation must be filed within three years.  CCI's dissolution was filed in the Secretary of the Commonwealth's office as required – Cole Raywid simply failed to file its claims within the applicable time limitations.

In its Opposition, Cole Raywid misstates both fact and law, including but not limited to, the following: (1) its repeated misinterpretations of the law it cites; (2) its glaring failure to submit a single fact related to Custom Communications, LLC to support personal jurisdiction; (3) its incorrect legal and factual assertions with respect to CCI and George's legal obligations; and (4) the business operations of the Defendants.

Both Defendants' motion to dismiss for lack of personal jurisdiction and CCI's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted.   Cole Raywid has not met its burden to establish that this Court has personal jurisdiction over the Defendants, nor has it met its burden to defeat CCI's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

<u>Facts</u>

The Defendants and CCI incorporate the facts stated in their respective motions to dismiss and submit the following supplemental facts.

In or about late December 2002, Cole Raywid received CCI's settlement funds from the National Society of the Daughters of the American Revolution ("NSDAR"). <u>See</u> Second Affidavit of Robert George in Defendants' Motion To Dismiss For Lack of Personal Jurisdiction ("2nd George Affidavit") at ¶ 2.   Cole Raywid originally asked for and received CCI's wiring information and agreed to forward the settlement funds to CCI.  <u>Id.</u>  As a result of Cole Raywid's agreement to forward CCI's settlement funds, CCI wrote checks to other vendors. <u>Id</u> at ¶ 3.   Several days later, CCI was informed that these checks had bounced.  <u>Id.</u>  Cole Raywid had not wired CCI its settlement funds.  <u>Id.</u> CCI contacted Cole Raywid and informed it that CCI bounced checks and requested that the settlement funds be released.  <u>Id.</u> at ¶¶3.   Cole Raywid refused to release the settlement funds to CCI.  <u>Id.</u> at ¶¶3-4.   Instead, Cole Raywid stated that it would only release CCI funds in the amount equal to cover the checks written by CCI and that it would retain the remaining $127,000 and require CCI and its owner Robert George to sign a promissory note and personal guarantee for the remainder of the outstanding legal

bills.[1] Id at ¶¶ 5-6; See Exhibit B Amended Complaint.  George told Cole Raywid that he did not want to sign a personal guarantee, but due to CCI's financial circumstances and its immediate need for the settlement funds he was left with no alternative.  See 2nd George Affidavit at ¶ 5.

Within one year, CCI dissolved in accordance with the laws of the Commonwealth of Massachusetts.  Id at ¶ 7.  Its bank accounts were closed and its property was sold to InfoGraphix.  Id.  Shortly after CCI's dissolution, in November 2003, George incorporated Strategic Communications, Inc. ("SCI") with the intention of restarting a publishing company.  Id at ¶ 8.  This endeavor quickly failed and by February 2004, George had abandoned SCI and went to work full time selling advertisement and acting as an editor at InfoGraphix.  Id at ¶ 8.  Although SCI did not dissolve until May 2005, SCI ceased all business operations in February 2004. Id at ¶ 8.

The Defendants are not a mere continuation of CCI or SCI.  See 2nd George Affidavit at ¶ 9.  There was not a *de facto* merger between CCI or SCI and the Defendants.  Id at ¶ 10.  The Defendants did not either explicitly or implicitly assume the liabilities of the CCI or SCI.  Id at ¶ 11.  The Defendants were not incorporated until years after the CCI dissolved.  Id at ¶ 12.  SCI did not cease business operations in an attempt to defraud any individuals or entities.  Id at ¶ 12.

---

[1] Cole Raywid posits that it was, in fact, entitled to retain all of the settlement funds to satisfy its outstanding legal bills and has the audacity to cite District of Columbia Rule of Professional Comment 1.15 comment 4.  Cole Raywid's position is wholly inaccurate and clearly misinterprets Rule 1.15 comment 4. When a client requests its settlement funds an attorney must release those funds.

<u>Argument</u>

I.    **COLE RAYWID HAS FAILED TO MEET ITS BURDEN TO DEFEAT THE DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION.**

The Defendants have submitted ample evidence, including affidavits and documents, which refute the meager allegations made by Cole Raywid to support its theory that the Defendants are the successors in interest of CCI, or that the Defendants are the alter ego of CCI or George. Despite correctly citing the well established case law that the Court is not required to accept plaintiff's allegations as true if the allegations are contradicted by affidavit, Cole Raywid ignores this law. <u>Novak-Canzeri v. Al Saud</u>, 864 F. Supp. 203, 206 (D.D.C. 1994) ("[T]he Court must accept Plaintiff's claims as true in ruling on a Rule 12(b)(2) motion, unless they are directly contradicted by an affidavit"). The affidavits submitted by George directly contradict the allegations that Cole Raywid relies upon. The Defendants' Motion to Dismiss for lack of personal jurisdiction should be granted.

> A. All of Cole Raywid's claims against Custom Communications LLC must be dismissed because Cole Raywid has failed to produce any evidence to support its contention that this Court has personal jurisdiction over Custom Communications, LLC.

Cole Raywid fails to submit a single allegation or any evidence supporting its unsubstantiated claims that Custom Communications, LLC is the successor in interest or alter ego of CCI or George. There is not a single reference to Custom Communications, LLC, in the first thirty-eight (38) pages of Cole Raywid's thirty-nine (39) page Opposition.

Cole Raywid has filed substantial legal claims against Custom Communications, LLC. Cole Raywid, however, has not submitted any evidence to support these claims,

and is forced to concede this in the single reference to Custom Communications, LLC in

a footnote on page thirty-eight (38):

> CRB has been unable to uncover evidence of the operation of CCI LLC
> (Cole Raywid's apparent abbreviation for Custom Communications, LLC),
> but given the abundant evidence of George's misuse of corporate forms,
> misrepresentations, and obfuscations, it, too, should remain in suit
> pending reasonable discovery.  Opposition at p. 39 note 57.

This is the most glaring example of the reckless abandon with which Cole Raywid has

pursued the instant action.  It admits it has no evidence, legal support or information that

would make Custom Communications, LLC a proper defendant in this case.

Nevertheless, Cole Raywid believes it is appropriate for Custom Communications to

remain in the instant action simply because Cole Raywid says so.

Cole Raywid is attempting to cast the widest possible net to try to drag any and all

entities into this action without regard for fact or law.  Custom Communications, LLC

should be dismissed from the instant action forthwith based on Cole Raywid's admission

that it has no evidence to support the claims that it has brought against Custom

Communications, LLC.

As will be shown herein, Cole Raywid repeatedly misstates both fact and law with

respect to its allegations against the other Defendants, who should also be dismissed from

the instant action along with Custom Communications, LLC.

B.  Cole Raywid fails to establish that the Defendants are successors in interest to
    CCI in light of George's testimony.

Cole Raywid repeatedly plays fast and loose with the facts and the law in a

desperate attempt to meet its burden of demonstrating that Defendants are successors in

interest to CCI.  In fact, Cole Raywid now seeks to alter its successor in interest theory to

add a different corporation, SCI, as a bridge between CCI and the Defendants.[2]  Cole

Raywid's allegations are only "supported" by a small amount of internet snapshots,

whose contexts are unknown and cannot be shown by Cole Raywid and have

questionable evidentiary value.[3]

     One of the most glaring examples of Cole Raywid's misapplication of the law is

the standard that Cole Raywid instructs the Court that it must follow to determine

whether the Defendants are successors in interest to CCI.  See Opposition at p. 18.

Relying on a District of Columbia case, Cole Raywid cites the four "circumstances" that

District of Columbia Courts will examine to determine whether an entity is a successor in

interest.  Id;  Material Supply Int'l, Inc. v. Sunmatch Industrial Co., Ltd., 62 F. Supp 2d

13, 23 (D.D.C. 1999).   Then, curiously Cole Raywid states that only one of these

circumstances needs to be found to establish jurisdiction.  See Opposition at p. 18.   Cole

Raywid, however, does not cite a District of Columbia case to support its conclusion - it

cites a case from Virginia, City of Richmond v. Madison Mgmt. Group, 918 F.2d 438,

455 (4th Cir. 1990), and does not supply a parenthetical reference to explain the case.

This is a clear attempt to try to mislead  the Court with respect to the burden Cole Raywid

must meet to establish that the Defendants are successors in interest to CCI.

---

[2] Cole Raywid goes as far to create its own document "George Entity Chart" and cites to this chart as fact
in stating "George formally re-incorporated CCI/Strategic Communications as "StratComm" in July 2005.
See Opposition at p. 12.  There is no entity known as CCI/Strategic Communications.
[3] See Lorrain v. Markel Am. Ins. Co., 241 F.R.D. 534, 555, n.30 (D. Md. 2007) citing St. Clair v. Johnny's
Oyster and Shrimp, Inc., 76 F. Supp 2d  773 (S.D. TX 1999) (" There is no way Plaintiff can overcome the
presumption that the information he discovered on the Internet is inherently untrustworthy. Anyone can put
anything on the Internet. No web-site is monitored for accuracy and nothing contained therein is under oath
or even subject to independent verification absent underlying documentation. Moreover, the Court holds no
illusions that hackers can adulterate the content on any web-site from any location at any time. For these
reasons, any evidence procured off the Internet is adequate for almost nothing, even under the most liberal
interpretation of the hearsay exception rules.")

Cole Raywid examines the four circumstances in three sections – each portion of its analysis is flawed.  Additionally, Cole Raywid has failed to meet its burden for any of the four circumstances and concedes this point in its request (now converted to a motion) for jurisdictional discovery.

       1.   Cole Raywid does not refute the testimony that the Defendants are not the mere continuation of CCI nor that a *de facto* merger did not occur.

Cole Raywid has failed to meet its burden in demonstrating that the Defendants are a mere continuation of CCI or that a *de facto* merger occurred between CCI and the Defendants.

       a.   Cole Raywid has not demonstrated a *de facto* merger occurred.

There was no *de facto* merger between CCI and the Defendants.  Once again, Cole Raywid reaches outside the District of Columbia - *de facto* mergers are not discussed in the <u>Material Supply</u> case[4] - to find the *de facto* merger theory and standard, which is found in the Third Circuit.  <u>Berg Chilling Sys., Inc. v. Hull Corp.</u>, 435 F. 3d 455,464-65 (3rd Cir. 2006).  Cole Raywid, however, neglects to inform the Court how the Third Circuit examined a *de facto* merger and that it is inapplicable in the instant action.

Cole Raywid quotes <u>Berg Chilling Sys., Inc.</u> as stating that a *de facto* merger is a transaction or set of transactions that "factually amounts to a consolidation or merger."  <u>See</u> Opposition at Page 18 note 24.  This quotation is only half of the sentence to which Cole Raywid refers.  <u>Berg Chilling Sys, Inc.</u>, 435 F. 3d at 465.  The *de facto* merger test, as set forth in <u>Berg Chilling Sys, Inc.</u>, relates to a contractual asset purchase agreement that amounted to the purchase of all of one corporation's assets and could be interpreted

---

[4] <u>Bingham v. Goldberg, Marchesano, Kohlman</u>, 637 A.2d 81, (D.C. 1994) includes the term *de facto* merger, however, there is no discussion of purpose or definition of doctrine, and it is not applied in the case.

as a merger.  Id.  The entire sentence that Cole Raywid selectively quotes from is as follows: "[W]hile *de facto* merger analysis inquires whether a transaction-though structured as an asset purchase-factually amounts to a consolidation or merger."  Id.  The *de facto* merger doctrine is inapplicable in the instant action because there is no contractual asset purchase agreement, nor did the Defendants acquire the assets of the CCI.

Cole Raywid incorrectly asks the Court to adopt the *de facto* merger doctrine which is inapplicable to the instant action.  Cole Raywid has failed to demonstrate that a *de facto* (or contractual) merger occurred between CCI and the Defendants.

   b.  Cole Raywid has not demonstrated that the Defendants are a mere continuation of CCI.

Cole Raywid has not refuted George's testimony and undisputed facts that the Defendants are not the mere continuation of CCI.  Cole Raywid's argument is easily distilled:  Robert George ("George") owned CCI; George now owns the Defendants; CCI was a publishing company and the Defendants are publishing companies, therefore the Defendants are mere continuations of CCI.   The true spirit Cole Raywid's argument is that any publishing company the George owns or is a director of is a successor in interest of CCI, regardless of whether the company is incorporated two years, four years, or twenty years after the lawful dissolution of CCI.  In essence, Cole Raywid believes that either a permanent injunction or non-competition clause should apply to George and the publishing industry.  Cole Raywid's argument fails as a matter of law.

Cole Raywid relies heavily on the Material Supply case, however, the plaintiff in that case had more factors supporting its theory than Cole Raywid has, and the Court did not deny the defendants motion to dismiss – it allowed for jurisdictional discovery.  The

Court was not persuaded by the facts that the corporations at issue had the same president, same corporate address, and the allegation of common directors.  <u>Material Supply</u>, 62 F. 2d at 24.  In the instant case, the mere fact that George owned CCI and now owns the Defendants is not enough to meet the mere continuation circumstance (additionally the Defendants' offices are in a different locations than CCI's former offices).  Cole Raywid has not demonstrated that it should even receive jurisdictional discovery.

The mere continuation circumstance relies on the continuity of businesses.  The cases cited by Cole Raywid do not address situations analogous to the instant action, where the alleged successor corporation was created almost two years after the dissolution of the original entity.  Cole Raywid completely ignores that CCI dissolved in November 2003 and that the first of the Defendants, did not incorporate until July 2005.

> 2.  Cole Raywid has not demonstrated, nor attempted to demonstrate that their was an express or implied agreement that the Defendants would assume the liabilities of the CCI

Cole Raywid has not produced any evidence to support the assertion that the Defendants assumed the liabilities of CCI.  Cole Raywid half-heartedly states "By virtue of the fact that the businesses are essentially identical to their predecessors, no other inference is plausible but that the successors took on Mr. George's prior business *in toto*."  <u>See</u> Opposition at Page 23.  This inference is in direct contradiction of all the evidence before the Court.  Cole Raywid concedes this by stating that it does not have information to make this argument by virtue of not knowing the arrangements between the Defendants and CCI.  <u>Id.</u>

There is no contractual agreement between the Defendants and CCI or SCI to assume CCI's liabilities.  <u>See</u> 2nd George Affidavit at ¶ 11.  Therefore, there is no express agreement to assume the liabilities of CCI.  <u>Id.</u>  There is certainly no implied agreement to assume the liabilities.  The Defendants were not formed until almost two years after CCI dissolved.  <u>Id.</u>  Additionally, <u>Material Supply</u> states that a plaintiff must do more than show that a defendant serves the initial corporations former customers – which is the core of much of Cole Raywid's entire successor in interest theory.  <u>Material Supply</u>, 62 F. 2d at 23.

Cole Raywid has not demonstrated that the Defendants have either explicitly or implicitly assumed the liabilities of CCI.

      3.  Cole Raywid has not demonstrated that there was Fraud, Lack of Good Faith, and Inadequate Consideration.

Cole Raywid has failed to show that CCI or George engaged in fraud, lacked good faith, or that inadequate consideration was involved in any business transaction.

Cole Raywid seeks to demonstrate that some form of fraud or bad faith existed by alleging that George or CCI had additional duties that are not required by law.  Cole Raywid argues that George engaged in fraud or bad faith by not reporting his business dealings to Cole Raywid or informing Cole Raywid that CCI dissolved.  Cole Raywid does not cite a single case that requires a business owner to notify creditors of its dissolution.

In Massachusetts, there is not a statutory requirement requiring a company to inform creditors of its dissolution.  The dissolution of a corporation is filed at the Secretary of the Commonwealth and is a public record.  Cole Raywid seeks to justify its ignorance of the corporate laws of Massachusetts and its failure to monitor the status of

CCI and George's public filings as fraudulent activity or bad faith. Cole Raywid is

wrong. Additionally, Cole Raywid cites no authority that would have required George to

continually update Cole Raywid of his business activities – that is because there is no

such requirement. Once again, all Defendants were incorporated with the Secretary of

the Commonwealth of Massachusetts and their certificates of incorporation are public

records. Cole Raywid certainly had constructive knowledge of CCI's dissolution and

Robert George's business activities.

Cole Raywid also lists eleven (11) factors to consider leading to the inference of

bad faith and fraud. See Opposition at p. 25-26. Cole Raywid either provides no

evidence to support its conclusion or ignores contradictory affidavit testimony, and the

facts of the instant action.

- Cole Raywid knew when it accepted CCI as a corporate client, especially knowing CCI's situation, that it risked CCI becoming insolvent as with any client. Cole Raywid improperly withheld CCI's money, and forced George under duress George to sign a personal guarantee – certainly not the fraudulent failure to perform contractual obligations that Cole Raywid concludes.

- George has not concealed his business affairs. All of his business entities are a matter of public record and have always been – certainly not the concealment Cole Raywid concludes.

- George has not engaged in self-dealing. All of the respective corporate transactions involving CCI and the Defendants have been legitimate.

- George has not made representations that are duplicitous. He has been intimidated for years by a large law firm that forced him, while acting as CCI's attorney, to sign a personal guarantee so that Cole Raywid would release CCI's funds that it was entitled to and should not have been withheld. George should not be liable for any of CCI's debts.

- George has never fabricated a false state of affairs by omission or artiface. All of his transactions have been a matter of public record.

- George has never frustrated any agreements with Cole Raywid. He was placed under duress by Cole Raywid because Cole Raywid held CCI's money hostage and forced George to sign a promissory note.

- George did not convey the assets of CCI without consideration. He sold the personal property to InfoGraphix.

- The mere fact that George has owned and owns multiple, separate, and distinct publishing companies does not show that he has engaged in fraud – this blanket conclusion is not steeped in fact or law.

- "The threat of litigation was apparent and ongoing since CCI/George failed to pay CCI's bills in 2002." See Opposition at p. 25. There was no threat of litigation. Cole Raywid had the right to seek to withdraw its representation of CCI and did not. CCI continued to flounder, went out of business and dissolved. There is no fraudulent activity in any of its activities based on any potential litigation Cole Raywid may have initiated.

- CCI was in financial difficulty each day following September 11, 2001. This fact was known by Cole Raywid and is the risk any law firm undertakes when it takes on a corporate client.

- There is a clear break in time between CCI's dissolution and the Defendants incorporation. Cole Raywid continues to ignore this undisputed fact.

Each of Cole Raywid's clear conclusions of fraud and bad faith are easily refuted by the evidence.

C. Cole Raywid has failed to prove that the Defendants are the Alter Ego's of CCI or Robert George.

Cole Raywid has not proven that the Defendants are the alter ego of CCI or George. Cole Raywid must prove that the Defendants are the alter ego's of either CCI or George. Material Supply, 62 F. 2d at 19. If Cole Raywid cannot prove that the Defendants are alter egos than it must rely on the Defendant's individual forum contacts – an issue that Cole Raywid concedes it cannot meet. Id.

13

Cole Raywid falls short of proving that the Defendants are alter egos of CCI or George. Cole Raywid concludes without support that the Defendants were created to avoid CCI's obligation and brazenly states that George cannot argue this conclusion. See Opposition at p. 27. Cole Raywid's conclusions are wrong. CCI was destroyed by September 11, 2001 and dissolved; George went to work full time for InforGrpahix[5]; was out of the publishing industry for well over one year; and then returned, focusing on different sectors of the publishing industry.

Additionally, Cole Raywid argues that corporate formalities do not exist and therefore the Defendants are alter egos of CCI. However, there are clear corporate formalities between George and the Defendants. George pays himself a salary, he maintains personal bank accounts separate from the Defendants' corporate accounts, and there is no commingling of personal and business funds. Also, the Defendants are not the product of fraud that would allow Cole Raywid to pierce the corporate veil.

In Cole Raywid's analysis of the fairness of piercing the corporate veil, it self-servingly ignores the relationship among Cole Raywid, CCI, and George. Cole Raywid argues that it would be unfair to Cole Raywid not to hold the Defendants responsible for CCI's debts. In essence, Cole Raywid argues that it would be inequitable for Cole Raywid not to collect its alleged fees from the Defendants, all of which Cole Raywid never represented. Cole Raywid chooses to ignore the circumstances around those alleged fees. Cole Raywid represented CCI; Cole Raywid did not represent George individually; Cole Raywid charged CCI legal fees that exceeded the amount recovered in the settlement; Cole Raywid refused to release funds it held that were undisputedly CCI's

---

[5] SCI functioned briefly, from November 2003 until February 2004. Following the cessation of business operations, George worked fulltime for InfoGraphix.

funds; Cole Raywid only agreed to release CCI's own funds when CCI and George individually agreed to execute a promissory note and a personal guarantee (under duress); Cole Raywid required CCI to allow Cole Raywid to keep $127,000 of the settlement funds. Setting aside any ethical issues with Cole Raywid's conduct, of which there may be many, on its face it is clear that the scales of fairness and equity tilt in favor of the Defendants not Cole Raywid. The Defendants received no benefit from the legal services provided by Cole Raywid to CCI.

Cole Raywid has not met its burden of proving that the Defendants are the alter egos of either George or CCI.

Cole Raywid has failed to meet its burden to establish that this Court has personal jurisdiction over the Defendants as successors in interest or alter egos of CCI or George. Accordingly, the Court should grant the Defendants Motion To Dismiss For Lack of Personal Jurisdiction, without ordering jurisdictional discovery.[6]

## II.    CUSTOM COMMUNICATIONS INTERNATIONAL INC.'S MOTION TO DISMISS PURSUANT TO 12(B)(6) SHOULD BE GRANTED WITHOUT ANY DISCOVERY.

Cole Raywid has not provided any evidence to refute the clear evidence that CCI is a dissolved corporation and that the three year time period to bring claims against it has expired. It is indisputable, despite Cole Raywid's efforts, that CCI was dissolved on November 13, 2003. This fact has been a matter of public record since November 2003 and Cole Raywid had constructive notice of this fact. Cole Raywid posits the nonsensical argument that there is a question of fact as to whether CCI survives as a legal or equitable entity. See Opposition at pp. 33-4. Once again, Cole Raywid cites no authority to

---

[6] A separate opposition to Cole Raywid's motion for jurisdictional discovery will be filed that addresses the merits of the request.

support these statements.  Id at pp. 32-33.  CCI was dissolved in November 2003 and

Cole Raywid acknowledges in its Opposition that CCI was dissolved.  Id at p. 31.

Realizing that its position is nonsensical Cole Raywid makes the argument that it

is entitled to discovery on whether CCI is in fact dissolved based on the fact that CCI

attached its certificate of dissolution to its motion to dismiss; that by attaching the

certificate CCI went outside the pleadings which converts the motion to dismiss to a

motion for summary judgment.  Cole Raywid's analysis is flawed in several areas.  Cole

Raywid's opposition is a desperate attempt to justify its failure to file the instant action

within the allotted statutory time to bring claims against a dissolved Massachusetts

Corporation.

It was appropriate for CCI to attach its articles of dissolution to its Motion to

Dismiss.  Cole Raywid's Amended Complaint states that George informed Cole Raywid

that CCI had dissolved.  See Amended Complaint at ¶ 33.  In a glaring omission to its

Amended Complaint, in which Cole Raywid attached Secretary of the Commonwealth

documents for BPC, StratComm, and Strategic Communications, Cole Raywid did not

attach the Secretary of the Commonwealth documents for CCI which show that it was

dissolved on November 13, 2003.  See Amended Complaint at exhibits D, G, and H.  It

is a reasonable inference to make that Cole Raywid did this intentionally to prevent the

Court from viewing public records, which clearly show that CCI was dissolved and to

prevent CCI from filing a motion to dismiss.  CCI appropriately attached the articles of

dissolution to its motion to dismiss.

The Opposition cites the same case that CCI cites, Pisciotta v. Shearson Lehman

Bros., 620 A.2d 520, 525, n.10 (D.C. 1993), which undisputedly stands for the

proposition that a moving party may attach documents to a 12(b)(6) motion when a

document has been referenced or omitted from the pleading.  Cole Raywid, however,

brazenly supplies only half of the applicable footnote in an attempt to mislead this Court.

To clarify the issue, the entire footnote is as follows:

FN10. There is no merit to appellants' remaining contention that Shearson, in moving to
dismiss their complaint, relied on exhibits outside the pleadings and thus exceeded the
lawful scope of a Rule 12(b)(6) motion to dismiss. Shearson's motion attacked the legal
sufficiency of the complaint, a proper ground for dismissal under Rule 12. Further, each
exhibit attached to the motion had been referred to in the complaint, so Shearson did not
rely on matters outside the complaint to support its motion. *See* 5 C. WRIGHT & A.
MILLER, FEDERAL PRACTICE AND PROCEDURE § 1327 at 762-63 (1990)
("[W]hen plaintiff fails to introduce a pertinent document as part of his pleading,
defendant may introduce the exhibit as part of his motion attacking the pleading."); *see
also Feinman v. Schulman Berlin & Davis,* 677 F.Supp. 168, 170 n. 3 (S.D.N.Y.1988)
(document referred to in pleadings but not attached thereto properly considered in motion
to dismiss; document found to be incorporated by reference in complaint).  Pisciotta, 620
A.2d at 525 n.10. (emphasis added)

Cole Raywid referenced CCI's dissolution in its Amended Complaint, but failed

to attach the Secretary of Commonwealth information, despite attaching similar

documents for many of the other corporate Defendants.

Additionally, Cole Raywid argues that attaching a document converts the motion

to dismiss into a motion for summary judgment "that cannot be decided until (at the

earliest) full discovery has taken place."  See Opposition at p. 32.  Not surprisingly, there

is no law to support this proposition.  The Court can enter summary judgment without

full discovery.  There can be no discovery with respect to CCI's dissolution; it is a matter

of public record that CCI dissolved.  Cole Raywid mysteriously argues that it should have

the opportunity to pursue the revival of CCI through the Secretary of the Commonwealth

of Massachusetts.  This type of activity is not an activity suited for discovery.  If Cole

Raywid seriously intended to pursue this activity it should have been done so long before filing this lawsuit.

Alternatively, if the Court believes that attaching the documents to the motion to dismiss was improper, the Court can take judicial notice of the fact that CCI is dissolved. Bostic v. District of Columbia, 906 A.2d 327, 332 (D.C. 2006) (Court may take judicial notice of laws, statutes, and other matters of public record). CCI's dissolution is a matter of public record and the Court may take judicial notice of it.

It is clear that Cole Raywid failed to file the instant action within the three year time limitation to file claims against a dissolved Massachusetts Corporation. The Court should grant CCI's motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and accordingly should not allow Cole Raywid's efforts to waste the time and resources of the parties on a fishing expedition for jurisdictional discovery.

Conclusion

For the foregoing reasons, the Court should grant the Defendants' motion to dismiss for lack of personal jurisdiction and CCI's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully Submitted,

BOSTON PUBLISHING COMPANY, INC,
STRATCOMM, INC., STRATEGIC
COMMUNICATIONS, INC, CUSTOM
COMMUNICATIONS LLC, AND
CUSTOM COMMUNICATIONS
INTERNATIONAL, INC.

By its attorneys,

/s/ William H. Anderson
William H. Anderson, Esquire (DC Bar No. 502380)
CUNEO, GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Phone: 202-789-3960
Fax: 202-789-1813

/s/ Andrew E. Goloboy
RONALD W. DUNBAR, JR (*pro hac vice admitted*)
ANDREW E. GOLOBOY (*pro hac vice admitted*)
DUNBAR LAW P.C.
10 High Street, Suite 700
Boston, MA 02110
Phone: 617-244-3550
Fax: 617-244-6363

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non-registered participants on
March 17, 2008.

/S/ Andrew E. Goloboy
Andrew E. Goloboy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COLE RAYWID & BRAVERMAN, LLP, <br>     Plaintiff <br><br> v. <br><br> ROBERT J. GEORGE, CUSTOM <br> COMMUNICATIONS INTERNATIONAL, INC., <br> BOSTON PUBLISHING COMPANY, INC., <br> STRATCOMM, INC., STRATEGIC <br> COMMUNICATIONS, INC., CUSTOM <br> COMMUNICATIONS, LLC <br>     Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 07-CV-2242-JR <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**SECOND AFFIDAVIT OF ROBERT J. GEORGE IN SUPPORT OF
DEFENDANTS, BOSTON PUBLISHING COMPANY, INC.'S, STRATCOMM,
INC.'S, STRATEGIC COMMUNICATIONS, INC.'S, AND CUSTOM
COMMUNICATIONS, LLC'S, MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION**

I, Robert J. George, hereby declare as follows:

1.      In 2002, I was the owner and president of Custom Communications

International, Inc. ("CCI").  In 2002, CCI was involved in a lawsuit with the National

Society of the Daughters of the American Revolution ("NSDAR").  The lawsuit was in

Washington D.C. and CCI was represented by Cole Raywid & Braverman, LLP ("Cole

Raywid")

2.      In the late 2002, approximately December, the law suit settled and it was

agreed that NSDAR would pay CCI a certain amount of money.  Cole Raywid contacted

me to get CCI's checking account and bank routing information so that the settlement

funds could be wired to CCI.   I immediately gave Cole Raywid the requested

information and expected that CCI's funds would be immediately released to CCI by Cole Raywid as it had agreed.

3.     After being informed that CCI's settlement funds would be wired to CCI, I wrote checks in the amount of $47,000 to pay the other two law firms that had assisted Cole Raywid with the case. Several days after writing the checks, I was informed that the checks had bounced and realized that Cole Raywid had not wired the settlement funds to CCI. I contacted Cole Raywid to see why the settlement funds had not been wired to CCI, as promised, and requested that the funds be wired.

4.     Cole Raywid informed me that it would not release the settlement funds to CCI, because CCI owed Cole Raywid for legal fees. I informed Cole Raywid that CCI's checks to the other two law firms had bounced and that CCI needed its money that Cole Raywid was holding.

5.     Cole Raywid refused to release the settlement funds to CCI. Cole Raywid agreed that it would only release a portion of the settlement funds to cover the bounced checks, under the condition CCI agreed to sign a promissory note and that I sign a personal guarantee. I told Cole Raywid that I did not want to sign a personal guarantee, but Cole Raywid would not release CCI's money until the promissory note and personal guarantee were signed. Due to the financial situation of CCI and the bounced checks, I relented and signed the promissory note on behalf of CCI and what I understood to be a personal guarantee.

6.     By signing the promissory note, Cole Raywid released funds, the next day, in the amount to cover the bounced checks, $47,000, and $1,000 remained for CCI and retained the remaining funds $127,000 to apply to CCI's bill.

7.    When CCI dissolved in November 2003, and its accounts were closed its property, which amounted to only $2,000, was sold to InfoGraphix.

8.    In November 2003, I incorporated Strategic Communications, Inc. ("SCI") with the intention of providing strategic consulting and publishing services to our old clients and possibly new clients . SCI failed due to lack of working capital by February 2004. SCI was unable to recapture or perform work for CCI's former clients that had terminated their contracts with CCI when they were forced to relocate their offices from the World Trade Center in the wake of September 11, 2001, and clients were difficult to find in the economic climate following 9/11. In February 2004, I and everyone else involved with SCI. abandoned the entity and took full time jobs with other companies. SCI was not dissolved until May 2005, but it ceased business operations in February 2004.

9.    I currently own Boston Publishing Company, Inc. ("BPC"), StratComm, Inc. ("StratComm"), Strategic Communications, Inc ("Strategic Communications") and Custom Communications LLC ("CC LLC)(collectively the "Defendants"). The Defendants are not mere continuations of CCI or SCI. I left the publishing industry from February 2004 through July 2005 when I incorporated StratComm. Additionally, between November 2003 and February 2004, I acted as an outside consultant to other business entities.

10.    There was neither a formal nor *de facto* merger between CCI and the Defendants. The Defendants did not receive the assets of CCI; there were no assets. There was neither a formal nor *de facto* merger between the Defendants and SCI. The Defendants did not receive the assets of SCI.

3

11.    The Defendants did not assume, either explicitly or implicitly, the debts of CCI.  There is no contract between the Defendants and CCI to assume its debts. Additionally, there could be no implicit agreement to assume CCI's debts because the Defendants received no benefits from CCI since they were organized several years after CCI dissolved.

12.    The Defendants were not incorporated in an attempt to defraud any individuals or entities.   The Defendants were incorporated after I had left the publishing industry completely for over one year and regained some level of financial security.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 16th day of March 2008.


/s/ Robert J. George
Robert J. George